### In re PAULINE'S FASHION SALON.
### No. 2941.

United States District Court,
S. D. California, S. D.
May 17, 1954.

**846**

William N. Byrd, Brawley, Cal., for Pauline Oliver.

Leon J. Garrie, Los Angeles, Cal., for petitioning creditors.

Caryl G. Sheldon, Pasadena, Cal., for Lin Howerton.

Ernest R. Utley, Darwin H. Wolford, Los Angeles, Cal., for Rheba Mastick.

WEINBERGER, District Judge.

The amended involuntary petition in bankruptcy filed January 17, 1951, al-leged that Pauline's Fashion Salon, a co-partnership composed of Rheba Mastick, Pauline Oliver and Lin Howerton had, on August 23, 1950, while insolvent, committed an act of bankruptcy;

It was further alleged that Beverly Jo Kellogg was a creditor in the sum of $1,250 on account of money loaned the partnership; that Palm Skirt Co. was a creditor in the sum of $370.26 for goods, wares and merchandise delivered on an open account; that Benjamin's of Hollywood was a creditor in the sum of $50 for goods, wares and merchandise delivered on an open account.

The petition also alleged on information and belief that the partnership was insolvent on or about August 23, 1950, and that each of the three co-partners, Mastick, Oliver and Howerton were on such date insolvent. The petition was verified by Beverly Jo Kellogg.

January 24, 1951 Rheba Mastick filed a notice of motion to dismiss the first amended petition; the motion was noticed for hearing for February 6, 1951; and according to the Referee's certificate, was heard on said date, and denied. While the notice of motion is found attached to, and mentioned in Referee's certificate, the order is not included, and as far as we are able to ascertain, no written order was made.

On February 26, 1951, Rheba Mastick filed an answer to the first amended petition wherein she denied a co-partnership existed on August 23, 1950; denied the petitioners had any provable claims against any such co-partnership or as against herself or as against Lin Howerton; alleged that Beverly Jo Kellogg one of the petitioning creditors loaned Pauline Oliver $1,250 for the latter's personal use; denied that either of the other petitioning creditors were creditors of any co-partnership as alleged; denied that she, Rheba Mastick, was ever a member of the alleged co-partnership; denied she, Rheba Mastick was, on any date, insolvent.

February 26, 1951, Lin Howerton filed an answer to the first amended petition,

denying most of the allegations thereof and specifically denying that he committed any act of bankruptcy, and denying that he was insolvent.

September 10, 1951, the Referee filed his "Partial Findings (Partnership Issue)" from which it appears there was a stipulation in open court between counsel that the issue as to whether Pauline Oliver, Lin Howerton and Rheba Mastick were partners in the business of Pauline's Fashion Salon from and after May 14, 1948 would be separated from the remaining issues and would be determined first.

Briefly, by these "Partial Findings" it was adjudicated that the three persons above mentioned were, and had been, partners in said business since May 14, 1948.

On November 15, 1951 Pauline Oliver filed a petition in voluntary bankruptcy for herself, individually, and was adjudicated a bankrupt on said date.

Her petition referred to a letter dated October 30, 1951, which read:

"To the Honorable
  "Edward T. Lannon
    "Referee in Bankruptcy
"Dear Sir:
  "I should like to advise you that as of the date the Involuntary Petition of Bankruptcy was filed against Paulines Fashion Salon in which Rheba Mastick, Linsey Howerton and myself were named as partners, I was insolvent and you may adjudicate me by default as bankrupt partner and individual at that time.
                  "Yours truly,
      "/s/  Pauline Oliver
      "/t/  Pauline Oliver"

Sometime prior to May 14, 1952, and after the filing of the "Partial Findings (Partnership Issue)", an additional attorney was associated as the counsel for Rheba Mastick, and in her behalf, on said first mentioned date, a notice of a petition to dismiss the first amended petition in involuntary bankruptcy was filed; the hearing was noticed for May 16, 1952. On the date of the hearing, a written motion was filed, which motion also requested summary judgment. No notice of the motion for summary judgment appears to have been served or filed and the record before us contains no ruling on said last mentioned motion.

An order denying the motion to dismiss was signed on May 16, 1952, and filed on July 22, 1952.

Also under date of May 16, 1952, a document entitled "Supplemental Findings on Partnership Issue" was signed, and filed on July 22, 1952.

Also under date of May 16, 1952, "Findings re Adjudication of Pauline's Fashion Salon as a Bankrupt" which included an order adjudicating said Pauline's Fashion Salon a bankrupt were signed, the same being filed July 22, 1952.

(The findings and order regarding adjudication recite that hearings were had on April 12, 1951, May 10, 1951, July 16, 1951, and May 16, 1952.)

Also on July 22, 1952, the Referee filed a Memorandum in which he referred to the supplemental findings and to the adjudication in bankruptcy.

Two petitions for review were filed on August 6, 1952 by Rheba Mastick and Lin Howerton. These petitions have been treated as one by the Referee in his certificate on review, and likewise have been so considered by counsel in their briefs on petitions for review. For the purposes of our decision on these matters, we shall view the two petitions as having been consolidated for hearing before this Court.

All of the findings and orders and the memorandum of the Referee which we have heretofore discussed are sought to be reviewed.

The issues presented by the petitions for review were summarized by this Court in a seventeen page memorandum which was handed to counsel on April 10, 1953, on which date counsel appeared for a hearing on said petitions. At that time the Court was engaged in the trial of a criminal case, and counsel met in cham-

bers, read the memorandum and agreed that the Court had correctly summarized the proceedings and set forth the issues. For these reasons, though we have included portions of the summary in this opinion, we shall file said summary.

At the close of the meeting of counsel in chambers, they expressed themselves as believing that the issues confronting them could be settled to their satisfaction and to the satisfaction of the trustee in bankruptcy, and subsequently many continuances of the hearing on petitions for review were granted awaiting the proposed settlement. When finally it became apparent that no settlement could be made, we took the matters under submission, and shall now set forth our views for the benefit of counsel.

Counsel for petitioners refer to the order denying Rheba Mastick's first motion to dismiss the amended complaint in involuntary bankruptcy as follows:

"That petitioners herein also petition for a review from the Court's order (if it should be construed that an error of Court was made) denying Rheba Mastick's motion to dismiss the first amended petition, which notice of motion was dated January 23, 1951 and filed on January 24, 1951."

This order is not before us; no petition for review was filed within the time provided by statute, and no extension of time was granted, nor have counsel shown any cause why this Court should review said order in the absence of a timely filing of petition to review it.

In her second motion to dismiss the amended petition in involuntary bankruptcy, filed May 14, 1952, Rheba Mastick urges that the petition does not state facts sufficient to give the Court jurisdiction over the subject matter of the petition. The notice of motion does not state in what matters the petition is lacking, nor does the written motion.

■ One of the grounds alleged, (4) is that the three petitioning creditors *do not have* claims fixed as to liability and liquidated as to amount against Rheba

Mastick, and/or the alleged co-partners of Pauline's Fashion Salon as required by the provisions of Section 59, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 95, sub. b. This ground goes to the merits of the claims, as distinguished from the sufficiency of the allegation in the petition with reference to said claims, and is properly an issue to be raised by answer, not by a motion to dismiss. As was said by the Court in In re Silver, D.C., 109 F.Supp. 200, 203, (cited by counsel for Rheba Mastick), which opinion was affirmed in 7 Cir., 204 F.2d 259:

"It requires no citation for the rule that where a motion to dismiss is presented the facts well pleaded in the petition are taken to be true."

However, in the petition to review, counsel for Rheba Mastick are more specific, and maintain that their motion to dismiss should have been granted because the petition fails to allege that the claims of the petitioning creditors are fixed as to liability and liquidated as to amount as required by the provisions of Section 59, sub. b. (The petition in involuntary bankruptcy is governed by the provisions of that section as they stood prior to the 1952 amendment.)

■ The amended petition states that the alleged bankrupt became indebted to two of the creditors for goods, wares and merchandise delivered on open account; that no part of the said account has been paid, though payment has been demanded; the third claim is stated to be one for moneys loaned to the alleged partnership in the sum of $1,250, no part of which has been paid, though payment has been demanded, and the amended petition alleges that Rheba Mastick was a member of the partnership, along with Pauline Oliver and Lin Howerton.

It is true the petition does not use the words "fixed as to liability and liquidated as to amount", but if it appears from the petition that these claims meet the test set forth in Section 59, sub. b of the Act as it then read, the conclusion in the words of the statute just quoted would

not add to the sufficiency of the pleading.

Counsel for petitioners for review cite In re Garrett & Co., 7 Cir., 134 F.2d 227; we do not think the claims mentioned in the petition before us are similar to the one mentioned in the Garrett case.

Also cited in the brief of petitioners for review is Carmel Film Productions, Inc., No. 47088–BH. We presume the opinion in this case is not reported, as no citation is given, but we note that counsel's summary of the facts and law involved in the case recites that an answer had been filed, and the matter had come to trial before the Court decided the matter. Evidently more than the sufficiency of the allegations themselves was considered.

Counsel also cites McClyman v. Hamilton, 9 Cir., 180 F.2d 965, mentioning that there was a holding to the effect that the claims were not fixed as to liability and amount. In that case the district court found *after trial* that Hamilton was not a partner and that the claims were not, *as to him,* fixed as to liability and liquidated as to amount. The Court of Appeals stated in its opinion that when Hamilton was found not to be a partner, the matter of the involuntary petition in bankruptcy ended as to him. There is no discussion in the reported opinion of the reasons which prompted the district court to hold that the claims were not, as to Hamilton, fixed as to liability and liquidated as to amount, but it would appear that the finding that he was not a partner would provide adequate basis.

In In re Central Illinois Oil and Refining Company, 7 Cir., 133 F.2d 657, cited by counsel for petitioners, the holding was to the effect that a secured creditor whose debt exceeded his security did not have a claim liquidated as to amount because until the value of the security was ascertained, it would not be known whether the difference between the value thereof and the amount due exceeded $500.00.

It is our thought that the opinion in In re Beechwood, D.C.N.J.1940, 36 F. Supp. 140 contains an extremely clear discussion on the sufficiency of the allegations as to claims of petitioning creditors in involuntary bankruptcy, and we quote from this opinion, beginning at page 142.

"But, the alleged bankrupt argues: the averment in the petition for involuntary bankruptcy that the American Surety Co. is a creditor having a provable claim fixed as to liability and liquidated as to amount is a mere conclusion of law; the claim is not fixed and liquidated, because it has not yet been determined how much, if any, the alleged bankrupt is indebted to his employer—in other words this claim could not be fixed and liquidated until a judgment is rendered against the alleged bankrupt.

"In support of the contention that this petition is defective because it has not been reduced to judgment, the alleged bankrupt cites the report of the master dismissing creditors' petitions in the case of In re Fowler. Therein, the petitioners claimed damages for the anticipatory breach of executory contracts, and the master concluded that Section 59, sub. b of the Bankruptcy Act, supra, intended to exclude all claims whose amounts had not been determined by some sort of adjudication or by agreement between the parties. However, the nature of the claims were obviously not fixed and liquidated.

"Herein, we are only permitted to examine the record before us. The fact that these claims may be flexible and unliquidated are based upon assumptions extrinsic to the record.

"(2, 3) This petition is not distinguishable from one alleging a debt created by reason of goods sold and delivered and services ren-

dered under contract, or the existence of a book account, etc. A tortious quality, indeed, enters into the nature of the claim, because it arises out of the alleged conversion by Beechwood. However, it is not the type of tort that must await juridical award to fix liability and the amount of damage as in the case of an injury to person or property or the taking of money's worth. Here the taking is expressed in a fixed amount of money. On a motion to dismiss we cannot take cognizance of the fact that the alleged bankrupt may have defenses to the whole or part of petitioner's claim. This is a matter that can be determined only after issue is raised by answer. Confined to the petition as we are, we believe the petitioning creditor has a claim fixed as to liability and liquidated as to amount.

"(4) There remains the objection that the allegations in the petition consist of legal conclusions. This requires but slight consideration. The petitioner alleges the underlying facts establishing itself as a creditor, i. e., it alleges various defalcations of the alleged bankrupt, the demand of the employer for reimbursement, and the assignment of the employer's claim against the alleged bankrupt. By virtue of these basic allegations the petitioner concludes it is a creditor of the alleged bankrupt in a definite amount. We think this is sufficient.

"The motion to dismiss is denied."

Also of importance to the question we are considering at this point is the opinion of Judge Casper Platt of the District Court, E.D., Illinois, in In re Silver, 109 F.Supp. 200; beginning at page 203, and continuing on pages 204 and 205, we find a careful analysis of the meaning of the words "liquidated as to amount". In affirming the decision the Court of Appeals, 204 F.2d 259, at page 260, said that with reference to whether the petition was filed by three qualified petitioning creditors with claims fixed as to liability and liquidated as to amount:

"* * * This issue is discussed in the District Court opinion, commencing on page 203 and concluding on page 204 of 109 F.Supp. The nature of the claims as well as the controlling principles of law are, so we think, adequately stated and, inasmuch as we agree with the reasoning of the court, we adopt the portion of the opinion pertaining to the issue before us as the opinion of this court."

See also In re Miller, D.C.N.D.Ohio, E.D., 9 F.R.D. 743, 744 (affirming an order of Referee C. D. Friebolin) in which it was stated:

"It is not essential that the debtor should specifically acknowledge the liability as a fixed one. The question turns on whether the amount alleged to be due has in fact been earned and is due in the amount stated. All of the circumstances considered, the claim is one which well could be found to be fixed as to liability and liquidated as to amount."

We hold that the amended petition in involuntary bankruptcy on its face is sufficient as against the motion to dismiss and that the Referee's order of May 16, 1952, insofar as it relates to the sufficiency of the allegations of said petition should be sustained.

The order adjudicating Pauline's Fashion Salon a bankrupt is found at the end of the document headed "Findings adjudication of Pauline's Fashion Salon as a Bankrupt".

These findings recite that on May 16, 1952 the court heard testimony and examined the proofs offered by the respective parties on the question of whether "the partnership entity known as Pauline's Fashion Salon" was a bankrupt as of the date of the filing of the involuntary petition in bankruptcy; further, that Pauline's Fashion Salon was regularly served with process and failed to answer or appear, that said Pauline's

Fashion Salon was declared in default and the clerk ordered to enter said default, and finally, "That said Pauline's Fashion Salon is hereby adjudged as a bankrupt as of December 19, 1950."

A transcript of the proceedings of May 16, 1952 accompanies the Referee's certificate. The record indicates that Leon J. Garrie, Esq., appeared for petitioning creditors; William Bird, Esq. for Pauline Oliver; Darwin H. Wolford and Ernest R. Utley, Esqs. appeared for Rheba Mastick, and Caryl G. Sheldon, Esq. appeared for Lin Howerton. No testimony was introduced at that hearing, according to said transcript.

We believe the following excerpt from our summary of the proceedings should be set forth in this memorandum:

"At the beginning of the hearing, Mr. Garrie requested that a default be entered against the partnership unit known as Pauline's Fashion Salon, on the ground that Pauline Oliver had filed a request to be adjudicated by default as a bankrupt partner and individually (the request was in the form of a letter) and that the only answer that had been filed was that of Rheba Mastick. That service had been made on Mrs. Mastick, Mrs. Oliver and on Lin Howerton; that the time for answer had passed; that the partnership as an entity had not filed an answer.

"Mr. Utley then pointed out that both Lin Howerton and Rheba Mastick had filed answers which put in issue the allegations of the involuntary petition, and requested a full hearing in the matter; whereupon Mr. Garrie argued that the Court could, of its own motion, adjudicate the partnership entity bankrupt without adjudicating the individual partners. Mr. Utley then stated that a person who claimed he was not a partner would not have authority to appear and answer for the partnership, and that where two of the alleged partners deny the existence of the partnership, deny their individual insolvency, then in order to prove insolvency of the partnership it would be necessary to prove the insolvency of each alleged partner individually.

"The Referee then remarked that he had ruled there was a partnership prior to the association of Mr. Utley in the case.

"The Referee then pointed out that * * * the hearing before the court was on the question of whether or not Mrs. Kellogg was a proper petitioning creditor, and that was the sole issue before the court. That since it had developed that all the alleged partners had been served, and that they had defaulted, it did not appear necessary to take testimony as to whether Mrs. Kellogg was a proper creditor.

\* \* \* \* \* \*

"The Referee further stated that it was his ruling that Pauline's Fashion Salon was adjudicated a bankrupt, and

"That the partners, as far as could be determined were Pauline Oliver and Lin Howerton. That it was doubtful whether Rheba Mastick was a partner or not; that as far as the Referee would go at that particular date would be to adjudicate that Pauline's Fashion Salon, a co-partnership consisting of Pauline Oliver and Lin Howerton was bankrupt.

"It was then pointed out by Attorneys Sheldon and Garrie that such ruling was inconsistent with the partial findings of the Referee made September 10, 1951, which found that Rheba Mastick was a partner; the Referee remarked that he was reversing his stand previously made only so far as Rheba Mastick was concerned.

"It was pointed out that there had been no additional testimony since the findings of September 10, 1951. Whereupon the Referee remarked

that he was at that time not making a final order, but stated:

"'The Referee is not finding that Rheba Mastick is a partner at this time, but I am not finding that she is not a partner either. We will let these creditors follow their own inclinations.'

"Mr. Wolford then offered to prove that there had been no evidence of solvency or insolvency of either Lin Howerton or Rheba Mastick, and offered to prove that at a prior hearing Rheba Mastick was present with her books and accounts, but at that time it was stipulated that only the issue of the partnership would be determined; that Rheba Mastick was again, on that day, present and prepared to be examined as to the question of insolvency on August 24, and 30 days after the filing of the attachment.

"The Court then ruled there was no reason to have proof.

"Counsel for Lin Howerton stated he wished to enter of record an offer of proof as to Lin Howerton similar to that of Rheba Mastick as to solvency, and stated that he had brought a financial statement, and that at the previous hearing he had brought books of account.

"The Referee then stated it was not necessary to find Howerton insolvent; that the question of insolvency applied only to the entity of the partnership."

In Collier's on Bankruptcy, 14th edition, Section 5.03, p. 693 it is said that the introduction of the "entity" theory of the firm, coupled with the refusal of the courts to apply it with rigorous logic to all problems * * * "has made this one of the most confusing branches of the law of bankruptcy".

■ However, any confusion as to the law on the subject, at least in the Ninth Circuit, is dispelled by the principles clearly set forth in the opinion of Chief Judge William Denman in Mason v. Mitchell, 9 Cir., 1943, 135 F.2d 599, 602. The following language in the concluding paragraph of this opinion leaves no room for discussion:

"We hold that under an allegation of partnership insolvency, the insolvency of all the partners must be proved."

See also Tom v. Sampsell, 9 Cir., 1942, 131 F.2d 779 and Kaufman-Brown Potato Co. v. Long, 9 Cir., 1950, 182 F.2d 594, 602, citing both of the cases just above mentioned.

The adjudication in bankruptcy and the default of the partnership should be set aside.

In their answers, as we have heretofore mentioned, both Rheba Mastick and Lin Howerton denied that they were partners, and further denied that the petitioning creditors had any claims against the partnership or against the petitioners and Rheba Mastick specifically denied that the claim of Beverly Jo Kellogg was a claim against her, or against the alleged partnership, but alleged it was a claim against Pauline Oliver individually, for moneys loaned to her personally and not on behalf of the alleged partnership.

Counsel for petitioners in their brief at page 6 state:

"Rheba Mastick and Lin Howerton deny that they or either of them are members of a partnership known as Pauline's Fashion Salon, they also deny liability for this note which is signed by someone other than themselves. This within itself shows that liability is not fixed as against Rheba Mastick and Lin Howerton or either of them as a partner or otherwise. And, we again repeat that the *Bankruptcy Court is without power to fix this liability since liability is something that must be fixed by some other court before this creditor can qualify as a petitioning creditor.*" (Emphasis supplied.)

Again, at pages 6 and 7, counsel state:

"Where the question of fixed liability is dependent, among other things, upon whether or not a person is a member of a partnership, and if such person denies being a partner, *here again the liability is not fixed, and the bankruptcy court is without power to fix it. This goes to the jurisdictional power of the court.*" (Emphasis supplied.)

At page 9, the statement is made:

" * * * but where liability is denied the Bankruptcy Court is without jurisdiction to fix the liability."

Counsel for petitioners, on another point involved herein, have cited the case of McClyman v. Hamilton, 180 F.2d 965; in that case the appellee was, by the district court after trial, found not to be a partner. (The matter came to the district court because a jury trial was requested on this issue and the issue of insolvency.) We find nothing in the reported opinion to indicate that either before the district court or on appeal it was urged the court had no jurisdiction to ascertain whether appellee was or was not a partner.

Section 18, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 41, sub. d, provides:

"If a party entitled to appear and plead shall appear, within the time limited, and controvert the facts alleged in the petition, the court shall determine, as soon as may be, the issues presented by the pleadings * * *."

We feel that the contention of counsel which we have quoted is adequately answered by the plain words of the statute set forth above. At any rate, all possibility of misinterpretation of the word "fixed" has, we think, been removed by the amendment of 1952 to Section 59, sub. b, 11 U.S.C.A., § 95, sub. b, changing the words "fixed as to liability" to "not contingent as to liability".

We hold, therefore, that the Referee was not obliged to dismiss the amended petition in involuntary bankruptcy because of the denials set forth in the answers, and that he had jurisdiction to hear and determine the issues as to who were members of the partnership, and whether the petitioning creditors' claims qualified under the statute, as well as other issues raised by the answers of the petitioners herein.

The partial findings filed September 10, 1951, the supplementary findings filed July 22, 1952, and the Referee's memorandum filed July 22, 1952, are in many respects inconsistent with each other, and with the Referee's certificate, on the question of whether Rheba Mastick was a member of the firm after the death of R. C. Kellogg. When we consider that the hearings were had over a period of a year and a half, and that at no hearing where testimony was introduced was a reporter present, it is easy to understand the task which confronted the Referee when he made his summary of the evidence which was included in his certificate. As we have remarked with reference to other bankruptcy reviews it is an injustice to require a court, a long time after testimony has been adduced, to include a summary of such evidence in a certificate on review unless such court has the benefit of a transcript. It is our view that the Referee should, on all controversial hearings, endeavor to protect himself by urging counsel involved to have the testimony reported and transcribed.

The Referee, in the Partial Findings, Partnership Issue, found that a partnership was created on January 30, 1948 by agreement between R. C. Kellogg, Lin Howerton, Rheba Mastick and Pauline Oliver, under the name of Pauline's Fashion Salon; that this partnership was terminated by the death of R. C. Kellogg on May 14, 1948. These findings are not disputed.

Further findings are quoted below:

"II

"That thereafter the surviving partners, namely, Pauline Oliver, Lin Howerton and Rheba Mastick,

from and after May 14, 1948, continued to operate said business commonly styled as Pauline's Fashion Salon located at 511 Main Street, Brawley, California; and further that a partnership consisting of Pauline Oliver, Lin Howerton and Rheba Mastick doing business as Pauline's Fashion Salon was duly formed as of May 14, 1948, by the terms of which the surviving partners agreed that all partners would be participating partners, but that Pauline Oliver would actively engage herself as the operating manager of said business; Lin Howerton would not actively engage in the operation of the business, but would contribute necessary capital when able; and that Rheba Mastick would provide the necessary advice and counsel required by Pauline Oliver in the operation of said business; and further that all partners would share equally in the profits and losses.

"III

"That as of the date of the hearing, July 16, 1951, the partnership created as of May 14, 1948, and consisting of Pauline Oliver, Lin Howerton and Rheba Mastick, doing business as Pauline's Fashion Salon was undissolved and had not been terminated."

Based upon the summary of the evidence contained in the Referee's certificate, we make the following observations:

There is no evidence of any sort that either Rheba Mastick or Lin Howerton "continued to operate" the business; there is no evidence that any of the surviving partners agreed on any terms whatever as to the manner in which the business should be operated; there is no evidence that Rheba Mastick ever was asked for, or provided Pauline Oliver with, any advice and counsel in the operation of said business. Pauline Oliver testified that there was no agreement made by the surviving partners as to the division of profits and losses.

Pauline Oliver testified that she made several buying trips to Los Angeles with Rheba Mastick after the death of R. C. Kellogg, but she did not testify that Rheba Mastick went with her to buy for the partnership; this testimony is explained by that of Rheba Mastick, who had her own dress shop, to the effect that she, Mrs. Mastick went on buying trips for her own store, and that Pauline Oliver accompanied her on one or two trips.

The Referee stated in his certificate that:

"Exhibit 'B' was introduced, being an invoice dated October 14, 1948 from Rozi Parker, bearing the names of Pauline Oliver and Rheba Mastick, along with other merchandise orders for Pauline's Fashion Salon;"

It was further stated in said certificate:

"Petitioners' Exhibits 'C' and 'D' were introduced being copies of merchandise orders dated May 13, 1948 from Addie Masters, signed by Rheba Mastick and listing as partners Pauline Oliver, Rheba Mastick and R. C. Kellogg. (It will be noted this was signed one day before the death of R. C. Kellogg)."

Regarding these exhibits, which are attached to the Referee's certificate, Mrs. Mastick testified that she never authorized any of the claimants listed on the exhibits nor anyone else to extend credit to Pauline Oliver or Pauline's Fashion Salon after the death of R. C. Kellogg. It appears that the Referee is in error in his statement that one of the invoices bears the signature of Rheba Mastick. An examination of these invoices shows that no one of them is dated before the death of R. C. Kellogg. Exhibit "B" is dated October 14, 1948; Exhibit "C" October 12, 1948; Exhibit "D", August 14, 1948. Each of these invoices appears to be signed by Pauline Oliver; at least,.

the writing of the signature on Mrs. Oliver's bankruptcy schedules and on the invoices seem identical. At the top of one of the invoices, we find the names "Dun Bradstreet, Oliver, Pauline, Brawley, Rheba Mastick, El Centro and Mr. R. C. Kellogg, Pasadena". On another invoice the same names, and in addition "Dorothy O'Hara" "Mergie" and "Agnes Barrett." All of these names appear to be in the handwriting of Pauline Oliver, and were evidently placed there as credit references, although R. C. Kellogg was deceased on the dates of these invoices. On none of the invoices do we find the name "Lin Howerton".

There is also the testimony of Pauline Oliver that she made statements that she was buying the interest of the surviving partners, and that she did buy the interest of Beverly Jo Kellogg, the widow of the deceased R. C. Kellogg. While she testified she did this on behalf of the partnership, she also testified that she borrowed the money for such purchase from the bank "on her face". Another witness testified that Pauline Oliver stated that she had given Lin Howerton a note for his interest in the partnership and that she owed Rheba Mastick as well as Lin Howerton for buying out their interests, and that the shop would be hers when she had paid them off.

The Referee mentions Exhibit 2 (page 8 of the certificate) but does not include it in his certificate. He describes it as a letter dated July 26, 1950 from Pauline Oliver to the landlord, Mr. Puffer, and mentions that Pauline Oliver admitted she wrote the letter to Mr. Puffer in which she stated that Rheba Mastick had no interest in Pauline's Fashion Salon.

Exhibit "H" is an assignment dated November 11, 1949 from Lin Howerton to Beverly Jo Kellogg; it states that he has a partnership interest in Pauline's Fashion Salon and that the assignment is executed as security for a note dated April 12, 1949 in favor of Mrs. Kellogg in the sum of $2,725, on which $2,275 had been paid.

A note signed by Pauline Oliver in the sum of $1,325 in favor of Beverly Jo Kellogg was introduced in evidence. It is dated January 28, 1950, and according to Pauline Oliver's testimony was given for the balance due and interest on the original amount of $1,500. The latter amount was paid to Pauline Oliver by Beverly Jo Kellogg by means of a check made out to Pauline's Fashion Shop, dated August 11, 1948, which Pauline Oliver testified represented a loan made by Lin Howerton and Mrs. R. C. Kellogg; that Mrs. Kellogg put up the money, and Lin Howerton was to repay Mrs. Kellogg half of it the next day, and that the money paid by Howerton "was a capital investment". Exhibit "F" was introduced, being a check of Beverly Jo Kellogg to Pauline's Fashion Salon showing a $500 loan dated October 12, 1948.

Lin Howerton testified that he loaned the money to Pauline Oliver because Mrs. Kellogg asked him to do so.

Beverly Jo Kellogg did not testify.

It is to be noted that the $1,500 check in evidence was dated after the death of Mr. Kellogg and before September of 1949. The latter date was fixed by Pauline Oliver, and found by the Referee, to be the date when Pauline Oliver, Lin Howerton and Rheba Mastick agreed to carry on the partnership which had been dissolved by Mr. Kellogg's death. It strikes us as strange that Mrs. Kellogg, if she thought she was loaning money to Pauline Oliver for the benefit of a partnership composed of the surviving partners, did not approach Rheba Mastick in the matter; and there is no evidence of any sort that the latter was consulted by any one regarding this loan, and none to show that the money so obtained was used for the benefit of the alleged partnership business.

It is a well-settled principle of law that where there is a denial of the

existence of a partnership, the burden is upon the petitioning creditors to prove their allegations. Utter v. Irvin, 5 Cir., 1942, 132 F.2d 416, 419; In re Fahey, D.C., 26 F.2d 382, affirmed Fahey v. Sapio, 5 Cir., 1929, 30 F.2d 330; Baker v. Bates-Street Shirt Co., 1 Cir., 1925, 6 F. 2d 854.

There is ample authority also, for the rule that there must be established an *actual* partnership; that the mere "holding out" is insufficient. McClyman v. Hamilton, 9 Cir., 1950, 180 F.2d 965, 968; Hotel Halcyon Corp. v. Acme Supply Co., 5 Cir., 1929, 36 F.2d 353; In re Kaplan, 7 Cir., 1916, 234 F. 866.

From the cases last cited it is evident that in bankruptcy, there is no such thing as being held a partner by estoppel, and unless an alleged partner is held to be an actual partner, such person is entirely, as to all creditors, out of the bankruptcy proceedings.

▮ The evidence as summarized by the Referee appears to us to justify, amply, the conclusion that Rheba Mastick was not a partner in Pauline's Fashion Salon at any time after the death of R. C. Kellogg.

With reference to Lin Howerton, the evidence seems consistent with either of two theories, one, that Pauline Oliver had arranged with Rheba Mastick, Lin Howerton and Beverly Jo Kellogg to take over the business in her own name and for her own account, and that Lin Howerton was backing Pauline Oliver in this regard; two, that Pauline Oliver and Lin Howerton had agreed to buy out the estate of Kellogg and Rheba Mastick, and have the business for themselves. Considering Howerton's statement in the assignment to Mrs. Kellogg mentioned earlier, we are inclined to regard the latter theory as having the most weight, and this leads us to sustain the Referee's conclusion that Pauline Oliver and Lin Howerton were partners in the business of Pauline's Fashion Salon at all times material to the bankruptcy proceedings.