In the Matter of **EASTERN SUPPLY COMPANY**, a Co-Partnership consisting of **Munroe E. Greene** and **Joseph Blonstein**, Partners.

### No. 22947.

United States District Court
W. D. Pennsylvania.
Jan. 8, 1959.

Meyer W. Gordon, David E. Seidelson, Rothman, Gordon & Foreman, Pittsburgh, Pa., for Eastern Supply Co.

Harry R. Levy, Pittsburgh, Pa., for creditors.

MARSH, District Judge.

On July 23, 1958, an involuntary petition in bankruptcy was filed against a co-partnership doing business in Pittsburgh, Pennsylvania, consisting of Munroe E. Greene and Joseph Blonstein, known as Eastern Supply Company and hereinafter referred to as Eastern. It alleged that within four months next preceding the filing of the petition Eastern committed an act of bankruptcy in that it did "on the 24th day of March, 1958, while insolvent, or unable to pay its debts as they matured, permitted or suffered voluntarily or involuntarily, the appointment of a Receiver to take charge of its property in the proceedings in The Court of Common Pleas of Allegheny County, at No. 3059, April Term, 1958, In Equity." It alleged, inter alia, that the petitioners were creditors of Eastern

having provable claims against it "fixed as to liability and liquidated in amount, amounting in the aggregate, in excess of the value of securities held by them, to $500. The nature and amount of your petitioners' claims are as follows:

"Columbian Enameling & Stamping Co., Inc.—
Goods sold and delivered:
Five Thousand Eight Hundred Eighty-one
and 95/100 ($5,881.95)
Astra Trading Corporation—Goods sold and delivered:
One Thousand and Thirty-six and 60/100 Dollars ($1,036.60)
Wahl Clipper Corp.—Goods sold and delivered:
Eight Hundred Seventy-one and 20/100 Dollars ($ 871.20)".

The petitioners are three foreign corporations. Each signed the petition by "its Attorney in Fact: Harry R. Levy".

The attorney in fact verified the petition on behalf of the petitioners swearing that the statements contained therein "are true".

Harry R. Levy also signed the petition as attorney for the petitioners.[1]

Eastern moved to dismiss the petition for the reasons (1) that it was not properly signed and verified, (2) that since the act of bankruptcy occurred four months less one day prior to the filing of the petition, of which the petitioning creditors and their attorney had knowledge for a period of over three months, no emergency existed to justify the signing and verification of the petition by anyone other than duly authorized officers of the petitioning corporations. Two additional reasons to dismiss were advanced by amendments to the motion, i. e., (3) that Harry R. Levy was without sufficient knowledge to sign and verify the petition properly, and (4) that the petition was not in accordance with the Bankruptcy Act[2] in that it failed to allege that the claims set forth therein were "not contingent as to liability".

On September 23, 1958, subsequent to the argument on the Motion to Dismiss, three other foreign corporations filed a petition for leave to intervene and join in the first creditors' petition to the end that Eastern might be adjudged a bankrupt. The intervention was opposed by Eastern in an answer filed on October 27, 1958. Further argument was heard as to the effect the intervening petition might have on the decision to be rendered on the Motion to Dismiss.

We think that if the original creditors' petition was insufficient and defective on its face, the intervention would be ineffectual to cure it;[3] but if the original petition was regular and sufficient on its face, intervention should be granted. Bankruptcy Act § 59, sub. f, Title 11 U.S.C.A. § 95, sub. f.[4] Upon consideration of the several thorough briefs, it is the court's opinion that the original petition is sufficient on its face, that the petition to intervene should be granted, and, since the original petition was filed within four months of an alleged act of bankruptcy, it must be sustained as a matter of right, the court having no discretion to dismiss and permit the State Court, through its receiver,

1. Mr. Levy has long since been authorized to practice in this court. See General Order No. 4, 11 U.S.C.A. following section 53.

2. Act of July 7, 1952, c. 579, § 16, 66 Stat. 425; 11 U.S.C.A. § 95, sub. b; Bankruptcy Act § 59, sub. b.

3. See: Pianta v. H. M. Reich Co., 2 Cir., 1935, 77 F.2d 888.

4. See: Canute S. S. Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244, 44 S.Ct. 67, 68 L.Ed. 287.

to administer the assets of Eastern. See: Blue Valley Creamery Co. v. Stone, 3 Cir., 1935, 80 F.2d 483; Sun-Lite Awning Corp. v. E. J. Conklin Aviation Corp., 4 Cir., 1949, 176 F.2d 344.

Even if we had discretion in the matter, in view of the relationship between Eastern and The 22 Corporation as revealed in the testimony taken and the argument of petitioners with respect thereto, it is not at all clear that we should exercise it in favor of dismissing the petition and permit administration in the State Court. Blue Valley Creamery Co. v. Stone, supra.

██ The reasons assigned in support of the Motion to Dismiss go to the form of the creditors' petition and we think must be disposed of on that basis.[5] However, after the motion was filed Eastern took the deposition of Harry R. Levy [6] in an attempt to show (1) that he had no authority from his clients as attorney at law or attorney in fact to execute, verify and file their petition prior to July 23, 1958, the date on which it was filed; and (2) that he did not have personal knowledge of the goods sold, the number of units sold, and whether or not the goods were delivered. In order to counter the effect of the deposition, Levy relied on a communication and submitted an affidavit from an executive officer of each of the creditor corporations, all dated subsequent to July 23, 1958, which conclusively disclosed that authorized agents and representatives of each corporation had, in fact, given Levy prior authority to file the involuntary petition, that said agents and representatives were authorized to do so by an executive officer of each, and that Levy's action in filing said petition, which we think includes executing and verifying it, was confirmed by the respective executive officers. Thus every person involved in the chain of communications to the attorney authorizing him to file the petition had prior, delegated authority from his principal.

Hence, there is now no question that if it be shown that the involuntary petition was improvidently filed, the petitioning creditors would be responsible as having effectively authorized it. See: Restatement, Agency, § 26 and §§ 77, 79.

In addition, Levy's deposition disclosed that he had personal knowledge of the alleged act of bankruptcy; that he did not have personal knowledge of the facts relating to the sales and delivery of the goods to Eastern; and that no emergency existed justifying the filing of the petition one day before the expiration of the four-month period since Levy, as well as the petitioning creditors, knew for upwards of three months prior to filing that a receiver had been appointed for Eastern by the State Court.

*The petition was properly signed and verified.*

The Bankruptcy Act provides that a " 'Petition' shall mean a document filed in a court of bankruptcy or with a clerk thereof initiating a proceeding under this title", Bankruptcy Act, § 1(24), 11 U.S.C.A. § 1(24); and that a " 'Creditor' * * * may include his duly authorized agent, attorney, or proxy", Bankruptcy Act, § 1(11), 11 U.S.C.A. § 1(11).

██ The appearance for a creditor by a practicing attorney creates a presumption that he has authority to act and the execution and verification of a petition by a creditor by its attorney in fact, who is also its attorney at law, imports that the person signing and verifying had prior authority to do so. See: In re Pearl Coal Co., 3 Cir., 1940, 115 F.2d 158; In re Holle, 7 Cir., 1955, 220 F.2d 850; Collier on Bankruptcy, 14th Ed., Vol. 3, p. 554.

██ An attorney at law does not need to have a formal warrant of attorney from a corporation to file a legal proceeding. Osborn v. United States Bank, 9 Wheat. 738, 830, 22 U.S. 738, 830, 6 L. Ed. 204. An actual employment so to do

---

5. See: Blue Valley Creamery Co. v. Stone, 3 Cir., 1935, 80 F.2d 483.

6. Mr. Levy objected to the taking of his deposition but his objections were overruled and the deposition was ordered by the Chief Judge of this court.

through an authorized agent, whether formal or informal, is sufficient. The confirmation of Levy's authority by an executive officer of each petitioning creditor conclusively establishes that he had, in fact, prior authority to execute and verify the involuntary petition.[7]

Therefore, we hold that the petition was sufficient on its face insofar as execution and verification are concerned, and the written confirmation of Levy's prior authority subsequently presented by each creditor "clinches the matter".

*Must an emergency be shown to justify the filing of a creditors' petition by an attorney for the creditors four months less one day after the alleged act of bankruptcy?*

■ It is our opinion that since the involuntary petition filed by the attorney for the petitioning creditors and executed and verified by him as attorney in fact was authorized, there is no necessity for the petition to allege or for the creditors to show subsequently that an emergency existed which prevented such execution and verification by authorized officers of foreign corporate creditors. See: In re Pearl Coal Co., supra; In re Holle, supra.

*Is it necessary that the attorney at law who verifies a creditors' petition as attorney in fact have personal knowledge of the factual details of the alleged provable claims?*

It appears that the person verifying a creditors' petition in bankruptcy must take an oath that the averments therein are true. Form 5, Creditors' Petition, 11 U.S.C.A. following section 53.

We entertain considerable doubt that the Supreme Court in promulgating Form 5 intended that an authorized affiant, on pain of perjury, must have absolute personal knowledge of each averment of fact and ultimate fact required in a creditors' petition. Some of those facts normally would be derived from information which the affiant deems reliable, and no doubt some courts would hold that the mandatory oath should be so understood.[8]

■ However, we see no necessity to pass on this question since it has been held "that a defective verification is not jurisdictional, and could not, in any event, do more than check the progress of litigation until the verification should be properly made." In re Chequasset Lumber Co., D.C.S.D.N.Y.1901, 112 F. 56, 58.[9] To permit a verification defective for lack of personal knowledge to be remedied does not constitute a new petition or a new verification. The sole function of remedying the defect is to cause necessary facts to appear which existed at the time when the petition was executed and verified. In the case at bar the fact that merchandise was sold and delivered for a certain amount to Eastern by each petitioning creditor was subsequently verified as "true and correct" by an executive officer of each in the aforementioned affidavits. These affidavits authenticated and confirmed the similar averments in the petition to which Levy swore. Hence, we think the defect was effectively remedied. Other facts averred in the petition such as the act of bankruptcy and place of debtor's principal place of business, etc. have not been challenged as not being within the personal knowledge of Mr. Levy.

*When a creditors' petition is conformed to Form No. 5, is it sufficient in the light of the Amendment of July 7, 1952, Bankruptcy Act, § 59, sub. b, 11 U.S.C.A. § 95, sub. b?*

Form 5, 11 U.S.C.A. following section 53, in conformity with the Amendment of 1938 to § 59, sub. b, prescribed an averment in a creditors' petition that the

---

7. See: Rodgers v. Bromberg, 5 Cir., 1931, 53 F.2d 723; In re Gasser, 8 Cir., 1900, 104 F. 537.

8. See analysis in In re Glass, D.C.W.D. Tenn.1902, 119 F. 509, at pages 518–519.

9. See also: In re Simonson, D.C.Ky.1899, 92 F. 904, affirmed on this point but reversed on other grounds sub nom. Simonson v. Sinsheimer, 6 Cir., 1899, 95 F. 948; Leidigh Carriage Co. v. Stengel, 6 Cir., 1899, 95 F. 637, 641; In re Vastbinder, D.C.Md.Pa.1903, 126 F. 417.

creditors have provable claims against the debtor "fixed as to liability and liquidated in amount". The Amendment to this subsection of July 7, 1952, c. 579, § 16, 66 Stat. 425, Bankruptcy Act, § 59, sub. b, 11 U.S.C.A. § 95, sub. b, provided that three or more creditors could file a petition "who have provable claims liquidated as to amount and not contingent as to liability against any person which amount in the aggregate * * * to $500 or over * * * to have him adjudged a bankrupt."[10]

 The creditors used Form 5 and did not delete the words "fixed as to liability" and did not substitute the words "not contingent as to liability".

In our opinion the failure to delete and substitute, or simply substitute, is not fatal.

Eastern cites no decision holding that the creditors *must allege in their petition* that their claims are "not contingent as to liability"; the Amendment merely requires that to be the fact as well as "liquidated as to amount". These essential jurisdictional facts can be found by the court from the averments in the petition which were confirmed by the aforementioned affidavits. If the claims were for "goods sold and delivered", "liquidated in amount" and "fixed as to liability", as averred, they were not "contingent as to liability".

Thus in this respect the petition on its face is sufficient. Cf. In re Pauline's Fashion Salon, D.C.S.D.Cal.S.D.1954, 121 F.Supp. 845, 848.

 There is some suggestion in one of Eastern's briefs that the claims were contingent, but on a Motion to Dismiss the court "cannot take cognizance of the fact that the alleged bankrupt may have defenses to the whole or part of petitioner's claim. This is a matter that can be determined only after issue is raised by answer. Confined to the petition as we are, we believe the petitioning * * *" creditors have in substance alleged claims liquidated as to amount and not contingent as to liability. In re Beechwood, D.C.N.J.1940, 36 F.Supp. 140, 142.

An appropriate order granting intervention and denying the Motion to Dismiss will be entered.

---

10. The change in the Act was made "to eliminate any confusion which might result from the use of the term 'fixed liability', and to make clear that it was not intended to restrict the claims under § 59 [sub.] b [11 U.S.C.A. § 95 [sub.] (b)] to those provable under § 63 [sub.] a(1) [11 U.S.C.A. [§] 103 [sub.] (a) (1)] which also uses the term 'fixed liability'." Collier on Bankruptcy, 14th Ed., Vol. 3, 1957 Cumulative Supplement, ¶ 59.14, page 78.