GEORGIA JEWELERS, INC., Alleged Bankrupt, Appellant,

v.

BULOVA WATCH CO., Golden Shield Corporation, Gruen Watch Co., and Columbia Diamond Ring Corporation, Appellees.

No. 19219.

United States Court of Appeals Fifth Circuit.

April 25, 1962.

Arnold S. Kaye, Atlanta, Ga., for appellant.

J. Kurt Holland, Haas, Holland & Zinkow, Atlanta, Ga., William M. Sinrich, for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal from a single order of the District Court affirming the decision of the Referee contested in two separate Petitions to Review filed by the Bankrupt [1] brings into question procedural problems concerning the sufficiency of the involuntary Petition of Bankruptcy, amendability of it, the propriety of the appointment of a Receiver to take over the books and records of the Bankrupt, the propriety of the use of the information gained from them in preparing amendments, and certain actions in connection with discovery depositions and interrogatories. Of a substantive nature is the question whether the Referee was correct in holding that a Court of Bankruptcy has no jurisdiction of a counterclaim by the Bankrupt seeking affirmative relief against the Petitioning Creditors. Interwoven with all of these questions is the problem of the reviewability of various Orders and the timeliness of the Petition to Review. As did the District Judge, we approve the two questioned orders and thereby all contested related actions of the Referee and affirm the District Court.

Probably the most important aspect of this case is not even the subject of an attack or counterattack by either party. That is the manner in which these appeals have brought the whole bankruptcy proceeding to a dead halt. In that respect the case demonstrates vividly the wisdom of the general proposition that (a) the statutory right to appeal from interlocutory orders of necessity requires that such orders be restricted to those having a definitive operative "finality," and (b) the balance of the proceeding should go on unless, on application and showing, a stay is granted under § 39, sub. c, 11 U.S.C.A. § 67, sub. c.

The Petitions of Review, as required by § 39, sub. c, were brought within 10 days of the two Orders of May 16 and May 24, 1961. Each of these Orders was precise and limited. That of May 16 allowed the amendments to the Bankruptcy Petition and denied the Bankrupt's Motion to Vacate the Receivership. That of

---

1. The Act defines "Bankrupt" to include one against whom a Petition has been filed. It is so used here since no adjudication has yet been had. § 1, 11 U.S.C.A. § 1.

May 24 dismissed the Bankrupt's asserted counterclaim against Petitioning Creditors.[2] But each of the two Petitions for Review set forth in great detail the complex steps taken between the time of the filing of the Petition on the preceding March 16 and May 16, May 24, respectively, and each complained of a number of actions taken by the Referee during that interim.[3] As to none of such preliminary Orders was a Petition of Review taken within the mandatory 10-day period. The Creditors urge that as to none of the antecedent preliminary Orders was review timely, consequently under the machinery of the Bankruptcy Act, such Orders are deemed to be those of the District Court, and as such are final and irretrievable. The Bankrupt contends that the 10-day period begins to run from the date of the final Order, and hence all prior interlocutory Orders are open for review.

As we think that our affirmance of the two main Orders of May 16 and May 24— as to which appealability and timeliness is not in dispute—washes out practically all of the preliminary orders or actions complained of, we do not think it necessary or wise to discuss each one of them ([a] through [q]) in terms of reviewability. Nor, in view of this, do we think it appropriate to discuss generally the controlling factors which bear on timeliness of review.

The attack on the May 16 order is primarily that the initial involuntary petition of bankruptcy was so "fatally defective" that it could not be amended. This rests on the contention that in setting forth the statutory acts of bankrupty, the petition was substantially a paraphrase of the substantive statute (§ 3, 11 U.S. C.A. § 21) without evidentiary details as to names of creditors, amounts and exact dates of preference payments, transfers, etc. This was remedied by the amended petition filed April 6 (see [g]) which set forth some 62 specific transactions occurring between January 3 and March 7.

2. No adjudication has been had. Hence the only Creditors are the four who filed the involuntary Petition. We refer to them simply as Creditors.

3. To facilitate discussion reference will be made to these actions as [a], [b], etc. Except where otherwise indicated ("X"), each of the Petitions of Review described the chronology of events and orders as follows:

| | Date | Description | Pet. May 16 Order | Pet. May 24 Order |
|---|---|---|---|---|
| [a] | March 16 | Involuntary Bankruptcy Petition Filed by Creditors. | | |
| [b] | March 17 | Application for Receiver. | | |
| [c] | March 20 | Receiver Apptd. | | |
| [d] | March 27 | Bkrpt's. Motion dismiss Pet. | | |
| [e] | March 31 | Bkrpt's Notice Take Depositions. | | |
| [f] | April 4 | Bkrpt's Motion Vacate Receiver. | | |
| [g] | April 6 | Amended Petition filed. | | |
| [h] | April 7 | Bkrpt's Depositions [e] Quashed on Cred's. Motion. | | |
| [i] | April 12 | Bkrpt's Amended Motion Dismiss Pet. | | |
| [j] | April 26 | Bkrpt's Amended Answer | X | |
| [k] | May 1 | Creds.' Motion Amend Amended Pet. | | |
| [l] | May 1 | Bkrpt serves Interrogatories. | | |
| [m] | May 9 | Extension time Creds' Answer Interrogatories. | | |
| [n] | May 10 | Bkrpt's Motion Continuance Hearing May 15. | | |
| [o] | May 11 | Continuance Denied. | | |
| [p] | May 16 | Allowing Amended Pet. Denying Vacate Receiver. | | X |
| [q] | May 24 | Dismissing Bkrpt's Counterclaim against Creditors. | X | |

But the Bankrupt asserts that this was ineffective since it was based on information improperly obtained through a Receiver appointed pursuant to a fatally defective petition. Moreover, the verification on it was defective. The Bankrupt objects to the Creditors' "Amendment to the Amendment" (see [k]) since this motion acknowledged that the motion of April 6 to amend (see [g]) failed to set forth in accordance with General Order 11, 11 U.S.C.A. following section 53 and F.R.Civ.P. 7(b) (1), 28 U.S.C.A. the reasons why the Amendment was tendered. More than that, the Bankrupt objected on the ground that the reasons stated in the motion constituted a judicial admission that at the time of the filing of the original petition the Creditors did not in fact have knowledge that the Bankrupt had committed either one or both of the specified statutory acts of bankruptcy.

Of course decisions can be found which talk in terms of "fatally defective" petitions, but we agree with Collier's that such descriptives are not decisive. "Far more preferable is the view that defects in pleading are not 'jurisdictional'; that whether or not they may be cured depends upon the power of amendment, and that a bankruptcy court has ample jurisdiction to permit amendments. Aside from a few isolated instances, judicial opinion amply supports these views." 2 Collier, Bankruptcy § 18.05, at 16. It is a question of amendability. That brings into play the Federal Rules of Civil Procedure, since under General Order 37 [4] they are applicable insofar as not inconsistent with the Bankruptcy Act.

■ Except where the terms of the Act or the General Orders or forms prescribed by them, call for evidentiary detail, the usual principle should prevail. Matching this intial petition against F.R. Civ.P. 12(b) (6), it certainly met the simple standard elucidated in Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and repeated by us almost monthly as we continue the sometimes despairing task of reestablishing a positive rule simply expressed but which must constantly resist erosion from the subtle influence of the local state practice on sufficiency of pleadings.[5] This petition actually did more than paraphrase the statute. It set forth in quite enough detail for the Bankrupt to know what to expect—that the transaction between it and its alleged affiliate Associated Investments, Inc. of Georgia was directly involved.

All in all the petition was sufficiently good to withstand a motion to dismiss. See 2 Collier, Bankruptcy § 18.26, at 51. Kay v. Federal Rubber Co., 3 Cir., 1930, 46 F.2d 64, 65; South Suburban Safeway Lines, Inc. v. Carcards, Inc., 2 Cir., 1958, 256 F.2d 934. To the extent that amendment was required—a point we need not decide since amendments were made—we are likewise clear that the allowance of them was well within the discretion of the Referee. Defective verifications may certainly be cured. E. L. "Bunch" Hullett, Inc. v. Universal C. I. T. Credit Corp., 10 Cir., 1958, 259 F.2d 685; Harris v. Mills Novelty Co., 10 Cir., 1939, 106 F.2d 976. So can a failure literally to follow General Order 11 or F.R.Civ.P. 7(b) (1) concerning motions to amend. And if—as we have just held—full evidentiary details do not have to be alleged in the petition at the very outset, there was nothing so "fatal" about the belated statement of the reason why the amendment was necessary to take this out of the wise discretion of the Referee.

■■ Apart from the form of the petition and the amendments, the Bankrupt seeks to have us also determine substantive questions at this time. So far as substantive timeliness is concerned, the two specified acts of bankruptcy having been

4. "In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. But the court may shorten the limitations of time prescribed so as to expedite hearings, and may otherwise modify the rules for the preparation or hearing of any particular proceeding."

5. See Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, 265, footnote 1.

alleged sufficiently to withstand a motion to dismiss, the question of relation back is governed by F.R.Civ.P. 15(c). A similar contention that no substantive claim is stated by the amended petition which alleges the transfer by the Bankrupt to its affiliate of certain notes due by it to others and on which the affiliate allegedly foreclosed a mortgage, must likewise fail at this stage. The proofs may ultimately show, as the Bankrupt contends, that this could not be such a transfer as to constitute an act of bankruptcy. But in the light of other indications of transfers between the Bankrupt and its affiliates to the apparently complete disadvantage of creditors generally, it does not appear to a certainty that evidence is unavailable to make out a prohibited act. In other words, this now depends on proof, not pleadings.

This means that the District Court was justified in upholding the Referee's order of May 16 [p]. With it falls also many preliminary actions [d], [g], [i] and [k].

■ Once we determine that the petition was sufficient, the attack on the appointment of a Receiver fails. Appointment of the Receiver to take custody and control of the books and records of the Bankrupt—nothing else apparently existed after intra-affiliate transactions—was certainly within the Referee's discretion. Harris v. Capehart-Farnsworth Corp., 8 Cir., 1953, 207 F.2d 512; Kattelman v. Madden, 8 Cir., 1937, 88 F.2d 858. The formal showing in the initial verified application was quite sufficient, and it was coroborated by the Receiver's deposition taken by the Bankrupt. Thus other challenged items collapse [b], [c], [f], [p].

In reaching these conclusions, we have had to consider—and now reject—the basic contention of the Bankrupt. The Bankrupt contends that information may not be used to shore up a defective petition where such detailed information is obtained from books and records in the custody of a Receiver whose appointment ought not to have been made because of the deficiencies of the petition. In the Bankrupt's brief the support is found in some restrictive decisions imposed on § 21, sub. a examination (11 U.S.C.A. § 44, sub. a). On argument it was perhaps extended to the analogy of the inadmissibility of evidence obtained through denial of civil rights,[6] but there is really no basis indicated for such a claim.

■ Apart from the analogy of a § 21, sub. a examination, which we next discuss, we see no impropriety in the full use of factual information ascertained through the opportunity of examining the Bankrupt's records and books in the Receiver's custody even in cases where it is later determined that the resort to a Receiver was improvident. This is really but another facet of the argument we initially rejected that there is somehow something fatally defective if the Creditors, at the time of the filing of the initial petition in bankruptcy, do not have all of the factual information they might later learn. To the extent that older decisions might affirm any such approach, they have long since lost their vitality. Bankruptcy is indeed a specialized branch of law and jurisdiction, but save in those areas still reserved to specialized treatment under General Order 37 (note 4, supra), it is otherwise subject to the same approach as other civil litigation. The essence of that system, reflected by the Civil Rules, is that pleadings seldom are now the means by which the claim is to be determined, or notice given to the adversary as to what facts might be asserted. That is the function of discovery. Without a doubt creditors would at a very early stage be entitled to full access to books and records of an alleged bankrupt, and certainly when then in the custody

---

6. E.G., state officers could no longer serve up on a silver platter to federal prosecutors evidence illegally obtained by state officers. Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688. Soon thereafter the platter could no longer be used to serve up such evidence even for the states' own use. Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

of the Receiver. § 49, 11 U.S.C.A. § 77. That is what—and all—they got here.

In this argument the Bankrupt gets no comfort from analogizing it to a § 21, sub. a hearing. Of course we have to acknowledge that 48 years ago this Court did put severe limitations on its use. "The purpose of the examination is to develop the whereabouts of assets of the estate for the purpose of aiding its administration, and not to enable the petitioning creditors to elucidate evidence to assist them in establishing the insolvency of the bankrupt or the act or acts of bankruptcy relied upon by them." Rawlins v. Hall-Epps Clothing Co., 5 Cir., 1914, 217 F. 884, 886; Abbott v. Wauchula Mfg. & Timber Co., 5 Cir., 1916, 229 F. 677. See also In re Stell, E.D.Tex., 1920, 269 F. 1008.

 But this has to give way in the face of two factors. The first is the declared purpose of § 21, sub. a.[7] Second, and even more decisive, is the impact of the Federal Rules and the modern concept of full discovery. Actually § 21, sub. a was a specialized forerunner of preliminary depositions allowed under F.R. Civ.P. 26. Hence, there is no such inconsistency as would make these Civil Rules inapplicable. General Order 37. On the contrary, the related provision in § 21, sub. b "incorporates into bankruptcy practice the complete right of discovery afforded by the Federal Rules of Civil Procedure." 2 Collier, Bankruptcy § 21.-25, at 327. See also § 21.34, at 346–47. The very purpose of pretrial depositions, requests for admission, written interrogatories, notice to produce documents, etc. is to obtain evidence not presently available to support a claim or defense asserted in good faith. Oral examination is not restricted to developing admissible evidence. The Rule was expressly amended to permit the widest examination even into hearsay matters with the limitation restricted to whether it might lead to the discovery of evidence. F.R.Civ.P. 26(b). Since a § 21, sub. a examination takes place before a judicial officer, it would be inconceivable that the scope of this inquisitory mechanism should be more, not less, restricted than that permitted to parties under the ordinary Rules.

 Use of the books and records as the source of information on which to base amendments was quite permissible. Since the depositions of Creditors and their attorneys and subsequent interrogatories addressed to them were sought to prove a use of books and records which we have just held to be permissible, it was not an abuse of discretion to deny their use here. Thus falls items [e], [h], [l], [m], [n], [o]. So far as the proposed depositions might have some other purpose or objective, the orders and actions [h], [m], do not purport to foreclose the matter. Depositions noticed were merely quashed for the present, and time for answering interrogatories was extended to an indefinite future time. The discovery machinery, flexible and comprehensive as it is, is open to all parties with the greatest of latitude. That includes the Bankrupt. But we simply hold that, aimed as they were toward getting evidence which was quite irrelevant, the Referee did not abuse his discretion by these actions. [h], [l], [m], [n], [o].

We may consider the May 24 order alone since we conclude that dismissal of the counterclaim was proper. Hence, every other action [a] through [q], even assuming some relationship, automatically falls with it.

 The Bankrupt asserted in its answer as additional defenses a counterclaim against the Creditor's seeking affirmative recovery of over $1 million in damages. The theory of liability was twofold, (a) unlawful conspiracy to misrepresent and destroy the reputation and financial credit of the Bankrupt, and (b) accomplishing a similar end through

---

7. § 21, sub. a. "The court may, upon application of any officer, bankrupt, or creditor, by order require any designated persons, including the bankrupt and his or her spouse, to appear before the court or before the judge of any State court, to be examined concerning the acts, conduct, or property of a bankrupt * * *." 11 U.S.C.A. § 44, sub. a.

abuse of legal process by filing an involuntary petition with inadequate facts, and thereafter obtaining factual data through an illegal appointment of a Receiver.

At the outset we should make plain what has not yet been determined. Diversity of citizenship and amount in controversy is present, so there is no adjudication that the controversy, if properly instituted, is beyond the jurisdiction of the United States District Court sitting in Civil Actions (equity or law). Nor has there been any determination that the facts provable under the counterclaims as framed would give rise to no substantive liability on which relief could be granted. What—and all that—has been determined is that the Bankruptcy Court *as such* has no jurisdiction of the counterclaim for affirmative damages.

It is difficult to follow the Bankrupt's theory. The Bankrupt seems to suggest that since the Creditors' involuntary petition of bankruptcy is filed in the Clerk's office as was the Bankrupt's defensive answer, this makes it a Civil Action which automatically brings into play F.R.Civ. P. 13(b) as to permissive counterclaims. It undertakes to shore up this argument by pointing to the conceded fact that a jury has been demanded to determine whether the specific acts of bankruptcy have been committed. § 19, 11 U.S.C.A. § 42. But a trial of that issue before the District Judge and a jury does not convert what is so obviously a "proceeding in bankruptcy" into an ordinary Civil Action of law or equity. It only confuses things to speak of the jury trial of severely restricted issues in terms of "summary" or "plenary." However described, it is by its very nature the court acting in its capacity as a Bankruptcy Court. The statutory privilege of a jury trial removes from the Referee a limited portion of the case for a limited purpose and limited time. The moment the jury trial is completed, this limited phase returns to the Referee.

There is really no place for such a counterclaim in the statutory scheme. It is not, for example, a case of mutual offsets such as under § 68, 11 U.S.C.A. § 108 where the estate or specific creditors have some interest in striking a balance. Nor is it a means of augmenting the estate for the benefit of creditors through the recovery of claims against others. This is an effort to use a specialized forum of limited jurisdiction to obtain an award of substantial sums for the private, personal use of the alleged bankrupt, and as to which it would not be called to account. To the extent that it does have a utility in the bankruptcy scheme, it is, of course, permissible. This includes as Associated Electronic Supply Co. of Omaha v. C. B. S. Electronic Sales Corp., 8 Cir., 1961, 288 F.2d 683, points out, counterclaims to reduce either the dollar amount of the claims, or the number of creditors below the statutory minimum. The restriction on the assertion of such offsets to extinguish or reduce creditors' claims does not rest on any antiquated or legalistic technical distinctions which may be generally outmoded.[8] Rather it is based on the fundamental nature of the bankruptcy jurisdiction as such.[9]

---

8. See 4 Collier, Bankruptcy §§ 68.20, 68.21, and 3 Moore, Federal Practice § 13.19 (2nd ed.), discussing the requirement of federal jurisdictional grounds to support affirmative recovery on a permissive counterclaim.

9. § 2, sub. a. 11 U.S.C.A. § 11, sub. a, "The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act * * *.

"b. Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

"The grant of jurisdiction 'at law' does not convert the bankruptcy proceeding into a common law action." 1 Collier, Bankruptcy § 2.08, at 161. And "the equitable jurisdiction conferred upon the bankruptcy court by § 2a, however, is not such as to enable the court to entertain a plenary suit in equity to adjudicate controversies having no proper relation to the business with which it is entrusted."

We find ourselves in full agreement with the Eighth Circuit in the Associated Electronic Supply Co. of Omaha v. C. B. S. Electronic Sales Corp., 8 Cir., 1961, 288 F.2d 683, as well as that Court's treatment of its prior decision in Harris v. Capehart-Farnsworth Corp., 8 Cir., 1955, 225 F.2d 268. See also Schreffler v. Schreffler, 10 Cir., 1946, 155 F.2d 221. The District Court was right, therefore, in upholding the Referee's dismissal of the counterclaim [q].

 Though this disposes of all of the matters covered in both petitions for review [a] through [q], we deem it appropriate to end as we began with a remonstrance against the manner in which these appeals have been permitted to halt all further activity in the bankruptcy proceedings. Here it is well over a year later, and there has yet been no adjudication. On the crucial issue of acts of bankruptcy alleged to have been committed by the Bankrupt and denied by it, the matter is no further along than it was ten days after the filing [a], [d]. The jury trial of the limited issue is still for the future. Claims of Creditors have not and cannot be filed until adjudication.

The situation portrayed here is similar to that we often see when, the parties or the Court, or both, mistakenly assume that in every routine appeal from a preliminary injunction the case cannot go forward for trial on the merits. There are occasions, of course, when proceedings in the trial Court must, or as a matter of sound discretion properly should, be held in abeyance pending authoritative resolution of the appeal. See, e. g., 4A C.J.S. Appeal and Error § 609; 3 Am.Jur. Appeal and Error §§ 558, 528, 534; F.R.Civ.P. 62(a) (c) (g). But the orders and actions in this case are not of that kind. Section 39, sub. c expressly authorizes a stay. This serves a dual

purpose. It first protects all from wasteful, time-consuming, expensive proceedings which are apt to be rendered useless by the decision on the interlocutory appeal. But second, it envisages a congressional purpose that the machinery move on unless a showing is made that a specified portion should remain in abeyance for a specified time and purpose.

Affirmed.

§ 2.09, at 167. And see 2 Collier, Bankruptcy § 23.12.

"So long as such claim is asserted only to reduce or extinguish the plaintiff's claim, there is no question that the bankruptcy court has jurisdiction to entertain it." But where the claimant tries to get

an affirmative recovery, it is a question of (1) jurisdiction and (2) consent. "It appears agreed that a bankruptcy court does not have the jurisdiction to render such a general judgment in favor of the bankrupt estate without consent; * * *." 4 Collier § 68.20 at 805.