In the Matter of C. C. THOMAS, Bankrupt, Petitioner.

No. 26617.

United States District Court
D. Colorado.

Nov. 28, 1962.

Allen A. Thoreen and Clayton H. Morrison, Denver, Colo., for C. C. Thomas.

William P. Horan, Alan Woods and Gerald Quiat, Denver, Colo., for Webb & Knapp.

Knowles & Shaw, Rodney O. McWhinney, Denver, Colo., for Youngstown Sheet & Tube Co.

DOYLE, District Judge.

On August 30, 1960 a creditor's petition was filed on behalf of Youngstown Sheet and Tube Company praying for a decree in involuntary bankruptcy against C. C. Thomas, alleging the commission of the third act of bankruptcy (paragraph 6 of

the Petition) [1] and the first act of bankruptcy (paragraph 7).[2]

A creditor's petition to intervene was filed by Webb & Knapp and Rice's Food Store on December 20, 1960. An alias subpoena was filed on December 23, 1960 ordering Thomas to answer by December 30 or be adjudged a bankrupt by default. On December 30, Thomas filed a motion to quash the alias subpoena. Chief Judge Arraj denied this motion to quash on January 9, 1961 and granted the petition for intervention of Webb & Knapp and Rice's Food Store, "Counsel for Respondent having waived objection to said intervention."

An answer was then filed by Thomas on January 24, 1961 challenging jurisdiction on the basis that petitioning creditors had not qualified as such under section 59, subs. b, e of the Bankruptcy Act, alleging failure to state a claim upon which relief could be granted, admitting certain indebtedness to Youngstown but asserting estoppel against the petitioner Youngstown because of participation in the alleged acts of bankruptcy, denying insolvency and requesting a jury trial. On January 25, 1961 Chief Judge Arraj signed an order of reference requesting the referee to "take such further proceedings as are required and permitted by said Bankruptcy Act."

Additional petitions were filed to permit the following parties to become additional petitioning creditors:

Murph's Express, a partnership, on March 1, 1961;
E. T. Cressman, March 9, 1961;
Peter B. Taylor, March 23, 1961; (This was amended August 7, 1961)
Messrs. Dawson, Nagel, Sherman and Howard, a law firm, April 5, 1962.

---

A hearing was had before the Referee on March 1, 1961 and at this time a motion of Webb & Knapp for continuance and for leave to offer further testimony

1. "6. Within four months next preceding the filing of this petition the said C. C. Thomas committed acts of bankruptcy in that on July 29, 1960, while insolvent, he suffered or permitted one of his creditors, The Youngstown Sheet and Tube Company, Petitioner herein, to obtain a lien upon certain of his property consisting of oil and gas interests standing in the name of Robert C. Thomas, but for the use and benefit of C. C. Thomas, and money held by Robert C. Thomas for C. C. Thomas through legal proceedings, to-wit: By attachment and garnishment pursuant to an execution made on July 29, 1960, upon the aforementioned judgment of the District Court in and for the City and County of Denver, and said C. C. Thomas did not vacate or discharge said lien within thirty days from the date thereof, or a least five days before the date set for any sale or other disposition of such property;

"And that on August 25, 1960, while insolvent he suffered or permitted one of his creditors, The Youngstown Sheet and Tube Company, Petitioner herein, to obtain a lien upon certain of his property consisting of the indebtedness of the Central Bank and Trust Co. to C. C. Thomas upon a bank account of said C. C. Thomas, in an amount in excess of $20.00, through legal proceedings, to-wit: By attachment and garnishment pursuant to execution made on August 25, 1960, upon the aforementioned judgment of the District Court in and for the City and County of Denever, and said C. C. Thomas did not vacate or discharge such lien at least five days before the disposition of such property. Based upon the answer of the garnishee, the Central Bank and Trust Co. made on August 29, 1960, showing personal property in its possession and under its control belonging to C. C. Thomas, in the amount of $121.22, the said District Court in and for the City and County of Denver on August 29, 1960, entered judgment in favor of C. C. Thomas for the use of The Youngstown Sheet and Tube Company against the garnishee Central Bank and Trust Co. for the amount of the indebtedness."

2. "7. That within one year next preceding the filing of this Petition the said C. C. Thomas committed an act of bankruptcy in that on or about June 1, 1960, he removed all of his property, including all of his money and assets to the Lincoln Douglas Hotel, Quincy, Illinois, or 408 North Broadway, Fairfield, Iowa, with intent to hinder, delay or defraud his creditors."

in support of its petition was denied and the entire matter taken under advisement.

By order of January 18, 1962 the Referee dismissed paragraph 6 of the petition and held that the intervening petitions would stand or fall on the act of bankruptcy alleged in paragraph 7.

By letter of February 23, 1962, the Referee informed all parties that on April 5 and 6 the matter would proceed to hearing, "If it shall appear there are sufficient creditors or intervening creditors the hearing will then proceed on the merits with respect to the commission of the act of bankruptcy alleged in paragraph 7 of the original petition herein."

Webb & Knapp petitioned for leave to amend paragraph 7 on March 27, 1962. This was granted by the referee after hearing on March 27, 1962 on condition that two or more intervening creditors join said amendment. Thereafter, Murph's Express, Rice's Food Store, Peter B. Taylor, E. T. Cressman and Youngstown Sheet and Tube Company all sought and were given leave to join in the amendment.

An amended answer was filed on April 5, 1962 by the alleged bankrupt which again requested a jury trial.

At the hearings held on April 5 and 6 it was determined by the referee that Youngstown, Webb & Knapp, Murph's Express, and Rice's Food Store were all qualified petitioning creditors. E. T. Cressman declined to offer testimony and it appeared that the claim of Peter B. Taylor was contingent as to liability and the claim of Dawson, Nagel, Sherman and Howard was secured, whereupon the latter three were dismissed. The alleged bankrupt's motion to dismiss the original petition as amended, and intervening petitions, was denied. On April 6, 1962 the Referee ordered counsel to supply briefs concerning their views of the alleged act of bankruptcy. Briefs were filed on April 26, 1962 by the original petitioning creditor and the intervening creditor, Webb & Knapp, and on May 17, 1962 by the respondent, C. C. Thomas.

On June 19, 1962 the referee rendered a Memorandum Opinion in which he stated: 1) that the order of reference authorized him to hear all matters except the issue of insolvency, this matter being triable only by a judge, and that the proceedings had been conducted on this basis without objection by the parties; 2) that in his opinion amended paragraph 7 was a sufficient allegation of the first act of bankruptcy to sustain the petition; and 3) a clear preponderance of the evidence indicated that the bankrupt had committed the first act of bankruptcy. This was upon a finding of fact that the alleged bankrupt, after fourteen years' residence at the Park Lane Hotel, Denver, from which he had conducted his business, had removed all of his furnishings, fixtures, books, machines and records to a warehouse of Gray Moving and Storage Company, Inc., in value in excess of Five Hundred Dollars, and a part thereof were stored in the name of the alleged bankrupt's son; that such issuance of the warehouse certificate in the name of said son was done to deplete the estate at a time when alleged bankrupt knew himself to be indebted to various creditors, and thus he did remove and conceal the property with the intent to hinder, delay and defraud his creditors.

A petition to review the referee's order having been duly filed on July 16, 1962, the referee certified the following questions for consideration on review:

1) Did the Referee err in refusing to dismiss the case on the ground that the original petitioning creditor had participated in the act of bankruptcy alleged in paragraph 6 of the original petition?

2) Did the Referee err in finding and determining that Youngstown Sheet and Tube Company, Webb & Knapp, Rice's Food Store and Murph's Express were eligible petitioning creditors?

3) Did the Referee err in permitting the amendment of the original petition to be filed by Webb & Knapp, Inc.?

4) Did the Referee err in determining that the respondent had committed the

first act of bankruptcy after the alleged bankrupt had demanded a jury trial?

5) Did the Referee err upon the evidence before him in finding that the alleged bankrupt had committed the first act of bankruptcy?

## I.

### THE QUESTION OF ESTOPPEL

Thomas takes the position that the Referee erred in refusing to dismiss the entire petition, once it appeared that the petitioning creditor had participated in the act of bankruptcy described in paragraph 6. He thus contends that this participation creates a general bar and thereby affects paragraph 7 of the petition (which allegedly is a distinct act of bankruptcy). The question arises, therefore, whether the participation in the act of bankruptcy described in paragraph 6 taints the entire transaction so as to render the petitioning creditor ineligible altogether.

The statute, section 59, sub. e of the Bankruptcy Act[3] does not provide an answer to the above question. It does impose a bar against creditors who have participated "in the act of bankruptcy," and by thus pinpointing it suggests that the bar operates only in respect to the particular act of bankruptcy in which the creditor has participated. Nevertheless, the language of the statute is somewhat vague and it is, therefore, necessary to inquire whether a genuine estoppel, or possibly unclean hands, result from participation in one act.

It is doubtful whether the doctrine is in law an estoppel; that term suggests misrepresentation by words or conduct whereby another individual changes his position in reliance thereon. Here, the creditor has definitely committed himself by his participation, but the other elements of estoppel are not present. It appears to be more like an election of remedies. See 28 C.J.S. Election of Remedies § 12 et seq.

This subject is discussed by Judge Learned Hand in the case of In re Lucey Mfg. Corporation, 2 Cir., 9 F.2d 313, 315, wherein it is pointed out that a creditor in bankruptcy has been wronged and because of this he may compel the debtor to submit to an equitable distribution of the latter's remaining assets, but that if he has induced the debtor to make the payment, or has consented to it in advance, the act of the debtor is not a wrong. The Court goes on to say that this is merely the application of general equitable principles. The Court then continues:

> "All this has no very near relation to estoppel, as the appellants seem to suppose. Under that term is properly included the conduct by which a person once wronged may disqualify himself from any effective complaint. It presupposes that the wrong has existed, and that the victim has had a remedy; it concerns itself only with whether the remedy has been lost. Such are the usual instances of assignments for the benefit of creditors, or receiverships, cases where the creditors might at one time have brought the estate into bankruptcy. The question is whether taking part in such proceedings concludes one from repudiating them later. As the law is not in general interested in the mere consistency of suitors, vacillation may not be fatal. Perhaps others must act upon the faith of what one says before one is estopped."

The Court's conclusion is that the creditor is barred by reason of consent as expressed in the maxim *volenti non fit injuria*.

Even if we concede, however, that estoppel is the proper basis, we would not reach the point urged by Thomas because the doctrine of estoppel is restricted to the transaction in question. See 31 C.J.S. Estoppel § 148.

---

3. "In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted

\* \* \* (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; \* \* \*."

In the case of In re Maryanov, 20 F.2d 939 (E.D.N.Y.1927), (which case, together with In re Lucey Manufacturing Company, supra, is relied on by Thomas), it is stated that the true basis for the principle is the unfairness of allowing a creditor who has induced the act of bankruptcy to take advantage of the very act which he has brought about.

■ Whether the bar is predicated upon estoppel, inequity, or possibly election of remedies (see 28 C.J.S. Election of Remedies § 12), does not appear to have any meaningful consequence. The important conclusion which emerges is that the act of the creditor does not result in his having unclean hands whereby he is henceforth precluded from availing himself of the bankruptcy act altogether. In other words, the legal consequence of his conduct is not to taint all of his relationship with the debtor so as to render him ineligible as a petitioning creditor. Neither the statute nor the underlying legal philosophy operates to bar the creditor from asserting a distinct act of bankruptcy such as that described in paragraph 7. It follows that the ruling of the Referee on this point was not erroneous.

## II.

### THE ELIGIBLE PETITIONING CREDITORS

Thomas next contends that Webb & Knapp was not an eligible petitioning creditor because its claim was not liquidated, and that Murph's Express and Rice's Food Store had not filed partnership affidavits and thus their claims would not be provable in state court. These arguments are without merit.

The Bankruptcy Act, § 59, sub. b, requires that the petition be filed by "three or more creditors who have provable claims liquidated as to amount and not contingent as to liability * * *."

■ The claim of Webb & Knapp arises upon a promissory note for $2,692.-45, together with interest "from and after November 1, 1959." Thomas maintains that this note was not liquidated or provable because it was either extinguished by a check dated November 5, 1958 intended to constitute full payment of all obligations of respondent to Webb & Knapp and/or was subject to a set-off claimed by evidence of a letter from Webb & Knapp dated November 26, 1958. A fixed debt absolutely owing evidenced by an instrument in writing is provable under § 63, sub. a(1) of the Bankruptcy Act. This is taken to include promissory notes and claims based thereon are subject to the general rules of negotiability. 3 Collier on Bankruptcy, § 63.14. The fact that the respondent may have defenses or counterclaims against the claimant would not affect the note's character as liquidated or provable as required by § 59, sub. b, nor prevent the claimant from having recognition as an eligible petitioning creditor. It *would* affect the allowance or disallowance of the claim when presented to the Referee for determination of various claims on their merits. The present determination is threshold in nature. It is not essential to pass on its merits.

■ "A disallowed claim and a nonprovable debt are not identical things; and a failure accurately to observe the distinction has led to confusion in argument." Lesser v. Gray, 236 U.S. 70, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915). The provable debts of Thomas include not only those which have actually been proved, but also those capable of being proved. 1 Collier on Bankruptcy, § 17.04. The determination of the Referee that Webb & Knapp was an eligible petitioning creditor should be sustained.

■ The contention of the respondent concerning Murph's Express and Rice's Food Store is that, having failed to file a partnership affidavit, they would be disqualified under the applicable Colorado statute, C.R.S.1953, 141–2–2, from proving their claims in state court. The Referee ruled that this statute was procedural and had no proper place in a bankruptcy proceeding. This ruling was correct.

■ It is true that the provability of claims is usually referred to applicable state law. 3 Collier on Bankruptcy, 14th

ed., § 63.07, at 1806. Nevertheless, the question whether or not a debt is provable in bankruptcy proceedings is essentially a federal question and is governed by the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938).

To hold with Thomas on this question it would be necessary to rule that the failure of creditors to file a partnership affidavit is substantively disqualifying. The conclusion of the Referee that the matter is purely one of local procedural policy is much more sensible; therefore, the Referee's conclusion that this statute is procedural and need not be here applied, was and is correct.

### III.

### THE RIGHT TO AMEND THE ORIGINAL PETITION

It has been argued by Thomas that the Referee erred in permitting Webb & Knapp to amend the original and intervening petition on March 27, 1962, because the original paragraph 7 was insufficient on its face, and furthermore that the original petition was a sham and a fraud upon the court. There are two phases to this question: *first*, was error committed in allowing Webb & Knapp to intervene; and *secondly*, was it proper to allow the amendment.[4]

The Bankruptcy Act, § 59, sub. f, provides that "Creditors other than the original petitioners may at any time enter their appearance and join in the petition."

According to Collier,[5] intervention is a matter of right. The scope and extent of this right is discussed extensively as follows:

"Section 59 f provides that a creditor 'may at any time' intervene and join in the petition. The creditor's right to intervene, within the proper time, is not subject to the court's discretion. Intervention to join in the petition, as a general rule, is a matter of right. A creditor may accordingly intervene and join in the petition, even though more than four months have passed since the act of bankruptcy alleged in the petition has occurred. By timely intervention the creditors may also avoid dismissal of the petition where it was shown that the claim of one of the petitioning creditors did not meet the requirements of § 59 b (three or more creditors with aggregate in excess of $500.00, or one creditor with $500.00 if total creditors less than twelve), *or that the petitioners were estopped* from joining the petition. Intervention is also proper where one creditor filed a petition on the assumption that the bankrupt's creditors were less than twelve and the bankrupt proved, in accordance with the procedure under § 59 d that his creditors were twelve or more and hence that at least three creditors must join in the petition." (Emphasis supplied)

The author goes on to explain that intervention will not be allowed to improperly confer jurisdiction upon the bankruptcy court where, for example, the creditors having full knowledge that they are estopped from filing a petition, do so in defiance of such knowledge. Fraud, or sham is, however, the burden of the debtor and there is a presumption of good faith and honesty on the part of the creditor-petitioner.

The only evidence relied on as showing that the petition as filed was a "sham" is

---

4. "7. That within four (4) months preceding the filing of the Petition herein, the said C. C. Thomas committed an act of bankruptcy by conveying, transferring, concealing, removing and permitting the concealing and removing of part of his property with the intent to hinder, delay and defraud his creditors, or any of them, by moving out of the Park Lane Hotel, 450 South Marion, Denver, Colorado, the premises in which he had lived for fourteen (14) years, and concealing all or part of his property in the Gray Moving and Storage Company, Denver, Colorado, and Quincy, Illinois and Fairfield, Iowa and elsewhere and departing from the State of Colorado with the intent to hinder, delay and defraud his creditors."

5. 3 Collier on Bankruptcy, § 59.30.

testimony by J. K. Glenn, of Youngstown, who verified the original petition, that he could not say definitely at the time he filed the petition that he knew that the respondent had moved his property to Fairfield, Iowa or Quincy, Illinois. He stated that he had made an effort to find property of Thomas in the state and had been unable to do so, and further that it was his understanding that Thomas could be located either in Fairfield, Iowa or Quincy, Illinois. It has been held that a defective verification is not jurisdictional and could do no more than impede the progress of litigation until a proper verification could be made. In re Chequasset Lumber Co., 112 F. 56 (S.D.N.Y.1901). However, In the Matter of Eastern Supply Company, 170 F.Supp. 246 (W.D.Pa., 1959) has treated a case similar to the present one. There an attorney signed the original petition and there, as here, it was argued that his lack of personal knowledge rendered the petition insufficient. The Court said:

"It appears that the person verifying a creditors' petition in bankruptcy must take an oath that the averments therein are true. * * *

"We entertain considerable doubt that the Supreme Court in promulgating Form 5 intended that an authorized affiant, on pain of perjury, must have absolute personal knowledge of each averment of fact and ultimate fact required in a creditors' petition. Some of those facts normally would be derived from information which the affiant deems reliable, and no doubt some courts would hold that the mandatory oath should be so understood." 170 F.Supp. at 250.

It has been also held that the original petition may make allegations upon information and belief. In re Haskell, 73 F.2d 879 (7 Cir., 1934).

■ The lack of absolute knowledge can not, therefore, render the petition sham. It follows that this ruling was proper.

With respect to the respondent's argument that the original petition was so fatally defective that it could not be cured by amendment, a recent case, Georgia Jewelers, Inc. v. Bulova Watch Co., 302 F.2d 362 (5 Cir., 1962) has examined the authorities and concluded that defects in pleading are not jurisdictional and that a bankruptcy court has sufficient authority to permit amendments. In accord: South Suburban Safeway Lines et al. v. Carcards, Inc., 256 F.2d 934 (2 Cir., 1958). 6 Am.Jur. on Bankruptcy, § 235. Under General Order 37 the Federal Rules are applicable insofar as they are not inconsistent with the Bankruptcy Act. With respect to the liberality of bankruptcy courts in granting the right to amend, see: In re Haskell, supra; In re Carden, 118 F.2d 677 (2 Cir., 1941), and Kay v. Federal Rubber Co., 46 F.2d 64 (3 Cir., 1930).

■ All that was required in the original petition was a sufficient allegation of the first act of bankruptcy in order that the respondent would be apprized of what he was required to meet. In re Adams, 53 F.Supp. 982, (M.D.Pa.1944).

"An allegation of an act of bankruptcy in the words of the statute is sufficient in the first instance as against a motion to dismiss. The most that the alleged bankrupt can obtain by a motion for dismissal under such circumstances and at such time is an order providing for an amendment of the petition and for a dismissal of the petition in the event of noncompliance with the order." 6 Am.Jur. on Bankruptcy, § 229.

In accord: Georgia Jewelers, Inc. v. Bulova Watch Co., supra, and In re International Hatters Supply Co., 46 F.Supp. 909 (S.D.N.Y.1942).

The situation as alleged in the original petition, paragraph 7, was based upon the only information available to the petitioning-creditor at that time, that Thomas had left the state and had taken all of his property with him either to Quincy, Illinois or Fairfield, Iowa. The amended

complaint, as explained by the petition of Webb & Knapp, was offered to comply with the facts as ascertained in a deposition of Thomas taken March 19, 1962, that all or part of his property had been moved to the Gray Moving and Storage Company, Denver, Colorado. The reason given for the amendment was that paragraph 6 had been dismissed and paragraph 7 could not be proved as alleged. This did not constitute an admission that the pleading was insufficient but only that the facts as now available did not support the original petition. This comes within the allowed amendment in Georgia Jewelers, Inc., supra, which states:

"The very purpose of pretrial depositions, requests for admission, written interrogatories, notice to produce documents, etc. is to obtain evidence not presently available to support a claim or defense asserted in good faith." 302 F.2d, at 368.

There is one expression from the Court of Appeals relative to the right to amend which appears to support the general law discussed above, and this is found in Superior Manufacturing Corp. v. Hessler Mfg. Co., 267 F.2d 302, at 304 (10 Cir., 1959); cert. den. 361 U.S. 876, 80 S.Ct. 139, 4 L.Ed.2d 114:

"An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the same cause of action originally pleaded or attempted to be pleaded. It is a perfection of an original pleading rather than the establishment of a new cause of action. And the imperfect pleading of jurisdictional facts does not deprive the court of jurisdiction as of the time the action is filed, if such defect is later corrected."

The Referee's grant of leave to amend to Webb & Knapp was within the sound discretion of the court, 2 Collier on Bankruptcy, § 18.21, and there is no evidence to show an abuse of this discretion.

## IV.

## WAIVER OF JURY TRIAL

Thomas' final contention is that he was deprived of a jury trial on the question of the commission of an act of bankruptcy. He states:

"That the Referee undertook to determine the question of the commission of an act of bankruptcy by the Respondent, thereby removing from the Respondent his constitutional right to a trial by jury on all issues, such right having been claimed by the Respondent in his original Answer filed on January 24, 1961 and his amended Answer filed April 5, 1962."

In his opinion, the Chief Referee said:

" * * * It is the opinion of the undersigned Referee that by this reference he was authorized and had jurisdiction to hear and determine all matters raised by the initiatory petition and the answer thereto excepting trial of the issue of insolvency, the latter issue being triable only by a Judge of the Court under Sections 1(20) and 19 of the Bankruptcy Act. The matter has proceeded on these bases with the full understanding of and without objection by any of the parties who have appeared before the Referees since the reference."

Thomas demanded a jury trial on all issues presented in his answer, but from a study of the record he did not pursue the matter. He made no objection to having the Referee hear the question of the act of bankruptcy. The intention of the Referee to try this issue was set forth in a letter dated February 23, 1962. The Referee did not call counsels' attention to the fact that Thomas had a right to a jury trial on this issue. Attorneys for Thomas made no objection whatsoever to proceeding to hearing on April 6, 1962; furthermore, they filed a brief with the Referee, which brief dealt entirely with the question of the act of bankruptcy which brief was filed on May 17, 1962.

In the light of the above facts, the matter resolves itself to whether an alleged bankrupt can, by going to trial and participating fully in the hearing, waive his right to a jury trial on the issue; or, is the referee obligated to ask for an express waiver.

 At the outset, it is important to note that the right is not a constitutional one as counsel seem to think. It does not appear to be within the scope of the Seventh Amendment which guarantees a jury trial "in suits at common law, where the value in controversy shall exceed twenty dollars." The bankruptcy proceeding is statutory in character and thus the right arises from the Act itself. See section 19 of the Bankruptcy Act, Title 11 U.S.C. § 42. It is, nevertheless, an absolute right, once a written application for it has been submitted. See Elliott v. Toeppner, 187 U.S. 327, 23 S.Ct. 133, 47 L.Ed. 200 (1902), 23 S.Ct. 133; Burns Bros. et al. v. Cook Coal Co., 42 F.2d 109 (3 Cir., 1930).

In a very early case the Supreme Court held that a jury trial may be waived by participation in the proceedings. In that case it was said:

"But the record before us contains no statement that the parties agreed in writing to submit the case to the court, nor any express statement that they waived a jury at all. The language of the judgment is, 'this case came up for trial. * * *'

"Is this court at liberty to infer from the entry of a waiver of the right to jury trial? When we consider the cases already cited, in which such a waiver has been implied, and that the right to have a jury when a party demands it, is so universally known and respected, we think that it is almost a necessary inference, where a party is present by counsel and goes to trial before the court without objection or exception, he has voluntarily waived his right to a jury and must be held in this court

to the legal consequences of such a waiver." Kearney v. Case, 12 Wall. 275, 20 L.Ed. 395 (1871).

In the case of In re Baker, 13 F.2d 119 (1926), the Ninth Circuit considered the same question, and quoted with approval the following:

" 'We think parties should not be permitted to play fast and loose with the court, to speculate upon the chances of a favorable decision under the reference, and after final decision against them for the first time to question the jurisdiction of the court to so act.' Wm. Edwards Co. v. La Dow, 230 F. 378, 144 C.C.A. 520 (6 Cir., 1916)."

 A careful search fails to uncover any authorities holding that there can not be an implied waiver or requiring that the Referee expressly bring the matter to the attention of the lawyers and demand a record waiver. It must be conceded that this latter practice would be much more desirable as a matter of policy than that which was followed in this case. Here, it would seem that the Referee may have pursued a standard procedure by assuming intent to waive the jury and was not attempting to mislead counsel. Attorneys are, on the other hand, expected to be aware of statutory rights and of the need to assert them. When, as here, they have gone forward without objection, it must be concluded that there was an implied waiver. As was said in Baker, supra, a party shall not be permitted to gamble on a favorable decision from the referee and then when that fails, claim that he was entitled to a jury trial in the first place. It is concluded that the action of the Referee in this regard was not error.

Having concluded that the Referee's rulings were correct, it is, therefore,

ORDERED, ADJUDGED AND DECREED that the determinations and judgments of the Referee shall be, and they are hereby approved and affirmed.