[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13317

Non-Argument Calendar

_____

In re: ELLINGSWORTH RESIDENTIAL COMMUNITY ASSOCIATION, INC.,

Debtor.

_____

ALICE GUAN,

Plaintiff-Appellant,

*versus*

ELLINGSWORTH RESIDENTIAL COMMUNITY ASSOCIATION, INC.,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-01409-WWB,
Bkcy No. 6:20-bk-01346-LVV

———————————

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

This is another appeal stemming from a dispute between Alice Guan and her homeowners association ("HOA")—Ellingsworth Residential Community Association, Inc.[1] ("Ellingsworth). As we explained in a prior related appeal,

> [a]fter Guan failed to conform her yard to the HOA's covenants, Ellingsworth sued Guan in state court. Guan countersued Ellingsworth for various state-law claims. The state court awarded Guan costs and fees because Ellingsworth had waived its claims against Guan by suing rather than arbitrating the dispute. But before Guan could collect and proceed with her

---

[1] Guan's briefing refers to both Meritage Homes and Ellingsworth. "Meritage Homes originally built and controlled Guan's subdivision . . . . and later transferred the HOA to Ellingsworth." *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 125 F.4th 1365, 1371 n.1 (11th Cir. 2025). Because Meritage is not involved in this appeal, we refer only to Ellingsworth.

22-13317                Opinion of the Court                3

counterclaims,     Ellingsworth     petitioned     for
subchapter V bankruptcy.

*In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 125 F.4th 1365 (11th Cir. 2025).  Guan appealed in the bankruptcy proceeding and filed proofs of claims.  This appeal is from the district court's order affirming the bankruptcy court's partial allowance and disallowance of her claims against Ellingsworth.  Guan, proceeding *pro se*, argues that (1) the bankruptcy court lacked jurisdiction to issue the underlying order because she had already appealed several other bankruptcy court orders at that time thereby divesting the bankruptcy court of jurisdiction; (2) the bankruptcy court lacked the statutory and constitutional authority to adjudicate her state law claims; and (3) the bankruptcy court erred in its handling of the trial on Guan's state law claims and her objections.[2]  After careful review, we conclude that the bankruptcy court had jurisdiction, and we affirm.

## I.    Background

Following its unsuccessful suit against Guan, Ellingsworth filed a voluntary petition for Chapter 11 bankruptcy under subchapter V.  Ellingsworth described itself as a not-for-profit corporation, operating as an HOA over three subdivisions for approximately 80 homeowners.  Ellingsworth asserted that it filed bankruptcy primarily because:

---

[2] Guan's arguments in her *pro se* brief have been rephrased and reorganized for clarity.

4                     Opinion of the Court                22-13317

(1) Guan had sought $500,000 in attorneys' fees and costs [related to the state court suit], and an undisclosed amount of damages in her state court counterclaim;

(2) its legal fees defending against Guan's counterclaim were unpaid; and

(3) it had unpaid repair and maintenance costs for the subdivisions.

*See In re Ellingsworth Residential*, 125 F.4th at 1371.

Guan appeared in the bankruptcy proceedings and filed two proofs of claims, which she later amended multiple times.[3]  In Claim 4-3, she sought $500,000 for attorneys' fees and costs associated with defending the state court lawsuit that Ellingsworth had filed against her (although the amount of the attorney's fees and costs Guan was entitled to had yet to be determined by the state court).    In Claim 5-2, she sought $1,600,000 for "Counterclaim/Modification of Such," which Guan averred included an estimate of her damages for her state court counterclaims,[4] the $500,000 in attorney's fees and costs, and punitive damages.

---

[3] Guan initially appeared with counsel in the bankruptcy proceedings, but counsel shortly thereafter withdrew, and Guan proceeded *pro se*  for the remainder of the proceedings.

[4] As we noted in Guan's other appeal, Guan asserted state law counterclaims for "(1) 'abuse of process'; (2) Florida RICO; (3) intentional infliction of emotional distress; (4) negligence; (5) breach of contract; and (6) 'Declaratory

22-13317                Opinion of the Court                5

Ellingsworth objected to Guan's amended claims on numerous grounds. Guan filed a response and repeatedly objected throughout the course of the bankruptcy proceedings to the bankruptcy court's adjudication of her state claims.

Meanwhile, Ellingsworth filed a reorganization plan, which the bankruptcy court approved over Guan's objections, and Guan appealed. Guan also appealed several other bankruptcy court orders, including a case management order directing her not to further amend her proof of claims, an order denying her request for relief from the automatic stay so that she could continue with litigating her counterclaims in state court, and an order denying her request for abstention.[5] Guan moved to stay further proceedings

---

Judgment on Association Authority and on Arbitration Requirement[s] per Contract that was Entered by Both Guan and Association.'" *In re Ellingsworth Residential*, 125 F.4th at 1372 n.3. "Guan later acknowledged that her declaratory relief claim was dismissed in state court, and she withdrew the negligence and breach of contract claims." *Id.*

[5] We note that the district court ultimately dismissed Guan's appeal of the case management order for lack of jurisdiction, concluding that it was not a final appealable order, and Guan appealed that order to this Court. We also dismissed her appeal on the case management order concluding that we lacked jurisdiction over this non-final order. Similarly, the district court dismissed Guan's appeal of the abstention order concluding that it was non-final. We disagreed, holding that a request for mandatory abstention is a final appealable order and remanded for the district court to consider the merits of her motion. *In re Ellingsworth*, 125 F.4th at 1383–84. Finally, we affirmed the denial of Guan's motion for relief from the stay. *Id.* at 1381–83.

in the bankruptcy court while her appeals were pending, but the bankruptcy court denied her request.

Although Guan's appeals from the above orders were pending, the bankruptcy court issued an order and memorandum opinion partially allowing Guan's Claim 4-3 in the amount of $377,496.60 in attorney's fees and costs related to the state court litigation[6] and disallowing Claim 5-2, concluding that she failed to state a claim for relief regarding her remaining state claims for abuse of process, RICO violation, and intentional infliction of emotional distress.

Guan then appealed the order partially allowing Claim 4-3 and disallowing Claim 5-2 ("the claims order") to the district court. In relevant part, she argued that (1) the bankruptcy court lacked jurisdiction to issue the claims order because of her other pending appeals from the order denying the automatic stay and the abstention order which divested the bankruptcy court of jurisdiction; (2) the bankruptcy court lacked the authority to issue the claims order because she had a right to a jury trial and she did not consent to the bankruptcy court adjudicating her claims; and (3) the bankruptcy court erred in its handling of her claims for a

---

[6] The bankruptcy court noted that it held a trial on the attorney's fees and costs and that Guan's former attorneys had substantiated their fees and costs in affidavits. It further found the fees and costs were reasonable. It excluded Guan's request for attorney's fees and costs for work that occurred outside the relevant entitlement period.

number of reasons. The district court affirmed the bankruptcy court's order. The present appeal followed.

## II.    Standard of Review

In bankruptcy appeals, we act "as a second court of review," independently examining the decisions of the bankruptcy court and applying the same standards as the district court. *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014). "[W]hen a district court affirms a bankruptcy court's order, as the district court did here, [we] review[] the bankruptcy court's decision." *Id.* "We review . . . factual findings for clear error and its legal conclusions de novo." *Id.* (quotations omitted).

Questions concerning a court's subject matter jurisdiction are reviewed *de novo*. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005).

## III.    Discussion

Guan argues that (1) the bankruptcy court lacked jurisdiction to issue the claims order because she had already appealed several other bankruptcy court orders at that time thereby divesting the bankruptcy court of jurisdiction; (2) the bankruptcy court lacked the statutory and constitutional authority to adjudicate her state law claims; and (3) the bankruptcy court erred in its handling of the trial on Guan's state law claims and her objections. We address each argument in turn.

### A.  Whether the bankruptcy court had been divested of jurisdiction by Guan's other appeals

Guan argues that the bankruptcy court lacked jurisdiction to issue the underlying claims order because her appeals of the bankruptcy court's initial case management order, the order denying her motion for relief from the automatic stay, and the order denying the motion for abstention were still pending thereby divesting the bankruptcy court of jurisdiction.

Generally, "[t]he filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control over those aspects of the case involved in the appeal." *In re Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008).  "However, it does not prevent the [bankruptcy] court from taking action in furtherance of the appeal. Nor does it prevent the court from entertaining motions on matters collateral to those at issue on appeal." *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (quotations and citation omitted). Moreover, bankruptcy cases are unique and "encompass[] numerous individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor.  It is thus common for bankruptcy courts to resolve discrete controversies definitively while the umbrella bankruptcy case remains pending." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020) (quotations and citation omitted).  While these orders that "dispose of discrete disputes within the larger bankruptcy case" are immediately appealable, *Id.* at 39 (alteration adopted), we have held that "proceedings in bankruptcy should not

halt merely because interlocutory orders are appealed [from] . . . . *Mavity v. Assocs. Discount Corp.*, 320 F.2d 133, 136 (5th Cir. 1963).[7] Rather, "a case should continue to be adjudicated on the merits by the [bankruptcy court] unless the order appealed from was of such a nature as to render further proceedings useless." *Id.*; *see also Ga. Jewelers, Inc. v. Bulova Watch Co.*, 302 F.2d 362, 364 (5th Cir. 1962) (explaining that where an interlocutory appeal is taken in a bankruptcy case, "the balance of the proceeding should go on unless, on application and showing, a stay is granted").

Here, the pending appeals of the case management order, the motion for relief from stay, and the abstention order did not divest the bankruptcy court of jurisdiction to issue the claims order. Those other orders that Guan appealed each definitively resolved "discrete controversies" that were collateral to whether her proof of claims should be allowed or disallowed in the bankruptcy proceeding.[8] *See Ritzen*, 589 U.S. at 38; *see also Mahone*, 326 F.3d at 1179; *Mavity*, 320 F.2d at 136. Moreover, Guan was denied a stay,

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8] We acknowledge that Guan's motion for abstention was based on her argument that the bankruptcy court had to abstain from ruling on her state law claims because they were non-core proceedings which should be adjudicated in state court. Even assuming arguendo that Guan is correct that the claims order should not have issued while her appeal from the abstention order was pending, there is no jurisdictional problem because, at the time the bankruptcy court issued the claims order, Guan's appeal of the abstention order to the district court had already been resolved.

and therefore, the remainder of the bankruptcy proceedings continued to go on. *See Ga. Jewelers, Inc.*, 302 F.2d at 364. Accordingly, we conclude that the bankruptcy court was not divested of jurisdiction by Guan's other appeals.

### B.  *Whether the bankruptcy court had constitutional and statutory authority to adjudicate Guan's state law claims*

Guan argues that the bankruptcy court lacked the constitutional authority to adjudicate her state law private rights claims because bankruptcy court judges are not Article III judges, and, therefore, cannot adjudicate state law claims without her consent. She also argues that the bankruptcy court lacked statutory authority under 28 U.S.C. § 157 to adjudicate personal injury tort claims without her consent. Finally, she argues that the bankruptcy court lacked jurisdiction because she had a Seventh Amendment right to a jury trial on her state law claims. Guan's arguments are unpersuasive.

Article III vests the "judicial Power of the United States" in the Supreme Court and in any inferior courts that Congress deems necessary to create, and decrees that the judges of those courts must have the protections of life tenure and undiminishable salary. *See* U.S. Const. art. III, § 1. "Article III, § 1, serves both to protect the role of the independent judiciary within the constitutional scheme of tripartite government, and to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government." *Commodity Futures*

*Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (citations and quotations omitted).

Bankruptcy judges are not Article III judges, but they are appointed and subject to removal by Article III judges. *See* 28 U.S.C. §§ 152(a)(1), (e). They serve "as a judicial officer of the [United States] district court," and "may exercise the authority conferred under [28 U.S.C. § 151 *et seq.*] with respect to any action, suit, or proceeding." *Id.* § 151.

The district court has "original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11 [of the U.S. Code], or arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334(b). Subject to constitutional limitations, the bankruptcy courts, in turn, exercise the powers delegated to them by the district courts pursuant to 28 U.S.C. § 157. *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

When a debtor files a bankruptcy petition, creditors have an opportunity to file proofs of claims against the estate. 11 U.S.C. § 501(a). If the claim is not objected to, then it is automatically allowed. *Id.* § 502(a). But, when, as here, the debtor objects, the bankruptcy court "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." *Id.* § 502(b). Section 157 defines the "allowance

or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11" as a "core proceeding." 28 U.S.C. § 157(b)(2)(B); *see also Stern v. Marshall*, 564 U.S. 462, 476 (2011) (explaining that "core proceedings are those that arise in a bankruptcy case or under Title 11"). That section further authorizes bankruptcy courts to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1).

As we explained in Guan's other appeal, "core proceedings arise under the Code itself or are central to the claims-allowance process. They encompass the court's role in administering the estate, liquidating assets, and determining the validity of claims." *In re Ellingsworth*, 125 F.4th at 1382–83. While Guan maintains that her state law claims are non-core proceedings, we rejected this argument in her prior appeal and held that the bankruptcy court's "adjudication of her proofs of claims was a core proceeding over which the [bankruptcy] [c]ourt had jurisdiction." *Id.* at 1382; *see also In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999) ("[T]he dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core.").

Although Guan argues that she never consented to the bankruptcy court's jurisdiction, we rejected this identical argument in her prior appeal, holding that "[b]y filing a proof of claim, Guan consented to the [c]ourt's equitable jurisdiction for all matters tied to the allowance or disallowance of her claim[s]." *In re Ellingsworth*,

125 F.4th at 1382. We are bound by that holding. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.").

Similarly, Guan's reliance on *Stern* to support her contention that the bankruptcy court lacked jurisdiction over her state law claims is misplaced. "In the *Stern* case the Supreme Court held that Article III prevents bankruptcy courts from entering final orders about non-core matters unless those matters need to 'necessarily be resolved' in the course of deciding a core matter. If they do, the bankruptcy court can enter a final order on the non-core matter." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1253 (11th Cir. 2020) (citing *Stern*, 564 U.S. at 497–99). Thus, there is no *Stern* problem here because we have held that Guan's state claims were in fact core proceedings to which she consented to the bankruptcy court adjudicating. *See In re Ellingsworth*, 125 F.4th at 1382; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 681–82 (2015) (holding that the "constitutional bar" announced in *Stern* does not apply where the creditor has consented to the bankruptcy court's adjudication of the claim). Moreover, we agree "that the narrow holding in *Stern*—which concerned the bankruptcy court's lack of constitutional authority to hear certain state common law counterclaims not necessarily resolved in the claims allowance process—is wholly inapplicable here," *In re Fisher Island Invs., Inc.*,

778 F.3d 1172, 1192 (11th Cir. 2015), because, unlike in *Stern*, "Ellingsworth's bankruptcy, and the payment of all creditors (including Guan), hinge on the resolution of Guan's [claims]." *In re Ellingsworth*, 125 F.4th at 1382. Thus, Guan's claims would necessarily be resolved as part of the claims allowance process. *See Stern*, 564 U.S. at 499 (explaining that Article III jurisdiction for the bankruptcy court to enter final judgment exists if "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").

Finally, Guan's argument that the bankruptcy court lacked jurisdiction because she had a Seventh Amendment right to a jury trial on her state law claims fails. We rejected this argument in her prior appeal, explaining that "[t]he right to a jury trial may exist for purely state-law claims that stand apart from the claims process, but when those claims become intertwined with bankruptcy, the Bankruptcy Court can exercise full jurisdiction over those claims." *In re Ellingsworth*, 125 F.4th at 1382. Accordingly, we concluded that "there was no Seventh Amendment right to a jury trial" for Guan's state law claims because her claims were "no longer isolated state law matters provided with the full panoply of trial protections" and were instead inextricably intertwined with the bankruptcy and would be resolved by the bankruptcy court as part of the adjudication of her proofs of claims. *Id.* at 1382–83.

### C. *Whether the bankruptcy court erred in its handling of Guan's proof of claims*

Guan raises a number of issues related to how the bankruptcy court handled her proof of claims. First, she argues that Ellingsworth's objections to her amended proof of claims were not valid because they were untimely. She maintains that because Ellingsworth failed to properly object, her claims should have been automatically allowed and the bankruptcy court's case management order was a legal nullity due to the lack of objection. Second, she maintains that the February 2021 trial was conducted without proper notice and asserts in a conclusory fashion that many evidentiary errors occurred during the proceeding. Finally, she asserts in a conclusory manner that the facts adduced at the February 2021 trial support her claims, and the bankruptcy court's decision otherwise was erroneous.

As noted previously, if a creditor's proof of claim is not objected to, then it is automatically allowed. 11 U.S.C. § 502(a). But, when, as here, the debtor objects, the bankruptcy court "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." *Id.* § 502(b). The Federal Rules of Bankruptcy provide that "[a]n objection to a claim and a notice of the objection must be filed and served at least 30 days before a scheduled hearing on the objection or any deadline for the claim holder to request a hearing." Fed. R. Bankr. P. 3007(a)(1). Guan contends that the bankruptcy court held a "hearing" on her claims on September 10, 2020, which

meant that under Rule 3007 Ellingsworth had to file its objections 30 days prior to that hearing, and it did not do so; therefore, its objections were untimely rendering them invalid.

Guan is mistaken that Ellingsworth failed to file timely objections to her proofs of claims.  Contrary to Guan's contention, the bankruptcy court did not hold a hearing on her claims on September 10, 2020.  Instead, the record confirms that the district court held a status conference on that date and then issued a case management order (1) directing Guan not to further amend her claims (after permitting previous multiple amendments); (2) directing Ellingsworth to file amended objections to Guan's amended claims by September 18, 2020; and (3) setting a future trial date on Ellingsworth's amended objections.[9]  Ellingsworth then filed its amended objections on September 18, 2020.  Guan

---

[9] To the extent that Guan argues that the case management order had "no legal effect" because Ellingsworth had not filed any objections at the time the bankruptcy court issued the order, her argument fails.  After Guan initially filed her proofs of claims, Ellingsworth submitted objections.  Guan then amended her proofs of claims multiple times, and at the September 10, 2020 status conference, Ellingsworth indicated it continued to object and it believed that its initial objections applied to Guan's amended claims, and it requested that the bankruptcy court go ahead and set a trial date on said objections.  After discussing the matter with both parties, the bankruptcy court requested that Ellingsworth file updated objections to the amended claims, provided Guan with a time to file any response to the objections, and set a trial date on those updated objections.  Such an action was completely within the bankruptcy court's discretion.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

then filed a response. The bankruptcy court then held a trial on Guan's claims on February 25, 2021. Accordingly, Ellingsworth's objections were timely under Rule 3007, and because Ellingsworth properly objected, Guan's claims were not automatically allowed. *Id*; 11 U.S.C. § 502(b). Rather, because Ellingsworth properly objected the bankruptcy court was required to hold a hearing and adjudicate the allowance of Guan's claims, which it did in February 2021. *See* 11 U.S.C. § 502(b).

Next, Guan argues that the February 2021 trial on her claims and Ellingsworth's objections was not properly noticed. The record belies her argument. The bankruptcy court issued a notice on September 14, 2020, expressly stating that "[a] trial on the debtor's amended objection to Ms. Guan's claims is scheduled for 9:30 a.m. on February 25, 2021." And Guan was clearly aware of this trial because she filed several notices and motions related to the trial prior to the trial date. Accordingly, she is not entitled to relief on this claim.

Relatedly, Guan asserts in a conclusory fashion that many evidentiary errors occurred during the proceeding, including that the bankruptcy court improperly excluded Guan's "key exhibits," did not allow her witnesses to testify, and improperly "removed" three of her state law claims (although she does not specify to which claims she refers). She fails, however, to provide any supporting authority or argument in support of her allegations. Accordingly, we conclude that she has abandoned any challenge to the bankruptcy court's evidentiary rulings. *See Sapuppo v. Allstate*

*Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (holding that the appellants had abandoned certain challenges where their "brief [made] no argument and cite[d] no authorities to support [their] conclusory assertions"). Moreover, even if not abandoned, Guan failed to show that the evidentiary rulings had a substantial prejudicial effect as required for us to overturn the bankruptcy court's evidentiary rulings. *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1265 (11th Cir. 2015) ("Even if the [bankruptcy] court did commit an abuse of discretion, we will overturn its evidentiary ruling only if the [challenging party has] shown that the ruling had a 'substantial prejudicial effect.'").

Finally, we conclude that Guan's conclusory assertions that the bankruptcy court erred in its factual findings and that the evidence at the February 2021 trial supported her claims are insufficient to preserve her claim for review. As with her evidentiary challenges, she fails to provide any supporting authority or argument in support of her allegations in her initial brief. While she attempts to correct this problem in her reply brief, her arguments come too late. *Sapuppo*, 739 F.3d at 683 (explaining that arguments made in a reply brief in support of a claim "come too late" and do not serve to resurrect an abandoned claim). Accordingly, we conclude that she has abandoned this claim. *See id.* at 682.

## IV. Conclusion

For the above reasons, we affirm.

**AFFIRMED.**